589 A.2d 205

Sidney E. MARKS

v.

William TASMAN, M.D. and William E. Benson, M.D. individually and trading as Springfield Realty Associates and Montgomery County Industrial Development Authority, Appellees.

Appeal of Samuel GROSSMAN and Harold Grossman, Executors of the Estate of Sidney E. Marks.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1990.

Decided April 10, 1991.

Edgar R. Einhorn, Philadelphia, for appellant.

Dennis L. Platt, Philadelphia, for William Tasman, M.D., William E. Benson, Individually, T/A Springfield Realty Assoc. and Montgomery County Indus. Development Authority.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

LARSEN, Justice.

This is an appeal from the order of the Superior Court, 393 Pa.Super. 646, 564 A.2d 1012, affirming the order of the Court of Common Pleas of Philadelphia County, which granted appellees' motion for summary judgment. Appellant Sidney E. Marks instituted this action in trespass against appellees Dr. William Tasman and Dr. William E. Benson, individually and trading as Springfield Realty Associates and against the Montgomery County Industrial Development Authority to recover for injuries sustained when he fell on the sidewalk outside of appellee doctors' offices.

The relevant facts are as follows. On September 2, 1983, appellant visited the medical offices of appellees Tasman and Benson, who are ophthalmologists, to have his eyes examined. Because appellant was 89 years old and legally blind at the time, he was accompanied to the offices by a friend, Winfield Codell. After the examination, and as he

was leaving, appellant tripped on something and fell on appellees' sidewalk, fracturing his hip.[1] At the time of the fall, Mr. Codell was walking in front of appellant and, therefore, did not actually see appellant fall.

On March 6, 1984, appellant filed the instant trespass action containing allegations of disrepair and negligence on the part of appellees. Appellant sought to recover for injuries sustained when he tripped on a large hole or depression in a defective, concrete block of appellees' sidewalk. Appellees Tasman and Benson filed an answer and a motion to join additional defendants Anthony & Allen Construction Inc., Diseroad and Wolf Architects Inc. and Winfield Codell,[2] which motion the trial court granted. Appellees Tasman and Benson then moved for summary judgment on December 3, 1986, claiming that appellant failed to establish the necessary element of causation. Appellant responded by submitting briefs, depositions and photographs supporting his position. The trial court, however, concluded that appellant "has failed to prove that [appellees] caused the [appellant's] accident" and that, therefore, there was no genuine issue of material fact. The trial court granted the motion for summary judgment by order of court dated May 16, 1988, and later amended said order of court to extend and apply summary judgment to the additional defendants. On appeal, the Superior Court affirmed. Subsequently, appellant filed a petition for allowance of appeal to this Court, which we granted on March 23, 1990.

 Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). An entry of summary judgment may be granted only in cases where the right is clear

1. Subsequent to the accident, but not as a consequence thereof, appellant died on April 18, 1985. The appeal is now being pursued by appellant's executors, Samuel Grossman and Harold Grossman.

2. Mr. Codell subsequently died also.

and free from doubt. *Musser v. Vilsmeier Auction Co., Inc.*, 522 Pa. 367, 369, 562 A.2d 279, 280 (1989). The moving party has the burden of proving the nonexistence of any genuine issue of material fact. *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 202–204, 412 A.2d 466, 468–69 (1979). The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Davis v. Pennzoil Co.*, 438 Pa. 194, 264 A.2d 597 (1970).

■ Rule 1035 also provides that "[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts showing that there is a genuine issue for trial.* If he does not respond, summary judgment, if appropriate, shall be entered against him." Pa.R.C.P. 1035(d) (Emphasis added). Therefore, where a motion for summary judgment has been made and properly supported, parties seeking to avoid the imposition of summary judgment must show by specific facts in their depositions, answers to interrogatories, admissions or affidavits that there is a genuine issue for trial. *See Overly v. Kass*, 382 Pa.Super. 108, 554 A.2d 970 (1989) and *Tom Morello Construction Co., Inc. v. Bridgeport Federal Savings and Loan Assn.*, 280 Pa.Super. 329, 421 A.2d 747 (1980).

■ Although there is no dispute that appellant fell, sustained personal injuries and was found on appellees' sidewalk, appellees, in their motion for summary judgment, claim that there is no genuine issue for trial because the evidence produced by appellant is not sufficient to show that the condition of the sidewalk *caused* appellant's fall. Having reviewed the depositions presented by appellant in response to appellees' summary judgment motion, we find that appellant has indeed raised a genuine issue for trial regarding causation, and therefore, summary judgment should not have been granted.

136

Appellant stated in his deposition that he tripped over something and fell forward onto the sidewalk (R. 89a). Appellant, who was legally blind at the time, could not identify what it was that he tripped on causing him to fall. However, the following excerpts from Mr. Codell's deposition provide valuable insight into what caused appellant's fall:

Q. When you left the doctor's office, could you tell us what you did, how you walked and where you were going

A. Well, this is a very—

Q. First of all, point so that Mr. Monahan can see.

A. This is a very narrow lane. So, I walked ahead.

Q. By how much?

A. Oh, I don't know; 10 feet, something like that to the main pavement.

Q. Then what?

A. Then, we turned right. I was slightly ahead of him, maybe a foot or so. As we turned here—

Q. What if anything happened?

A. I heard a cry from him, and I quickly turned around. He was laying on the ground.

\* \* \* \* \* \*

Q. When you saw him, on which block were his feet and on which block was his head?

A. His feet were here and his head was here.

Q. Now, I'm going to show you what we have marked as P-2, which is an enlargement of those two blocks.

A. Yes.

Q. Now, you'll see one block has a black circle on it. It's white, and then you have the other block.

On which block were his feet and which block was his head?

\* \* \* \* \* \*

Q. Now, which block were his feet on?

A. His feet were on the white block.

Q. Show me on this one.

A. His feet—I can't put it exactly, but his feet were down here somewhere. His head was facing this way.

Q. Would you agree that his feet were in the area where there was a circle, and his head was on the adjoining block?

A. Yes.

Q. You have drawn in something that looks like a body; is that right?

A. Yes. I'm not very good at drawing.

Q. Now, that's where you saw him immediately as you turned around?

A. Yes.

Q. What next do you remember happening?

A. He cried out, "I tripped over something. I think I broke my hip."

\*　　\*　　\*　　\*　　\*　　\*

Q. How soon after you heard the cry did he say this to you?

A. Right away, as soon as I turned around.

Q. At that point he was on the ground?

A. Yes.

(R.R. at 146a–149a)

Using photographs of the sidewalk where appellant fell, Mr. Codell, during his deposition, specifically marked where appellant's feet were *immediately* following appellant's fall. Mr. Codell established that appellant's feet were in the area of a large hole or depression located in a block of concrete on the appellees' sidewalk. Taken as a whole, the evidence shows that appellant fell, that he fell because he tripped and that when he fell his feet were in a large indentation in the sidewalk. From this, it logically and reasonably could be inferred that appellant tripped on the large hole in the sidewalk. This evidence, if believed, is sufficient to establish that appellant fell because of the defect in the sidewalk, thus creating a genuine issue of material fact for trial.

138

Accordingly, we reverse the decision of the Superior Court and remand the case to the Court of Common Pleas for further proceedings consistent with this opinion.

NIX, C.J., and McDERMOTT, J., concurred in the result.

ZAPPALA, J., dissents in the result without an opinion.