## Somerset Motel Partners v.
## U.S. National Bank in Johnstown

*Carolann A. Young,* for plaintiff.
*Amy E. Bentz,* for defendant.

CASCIO, *J.,* April 14, 1993—This case is before us on defendant's motion for summary judgment. For the reasons herein, defendant's motion is granted.

A motion for summary judgment may be sustained "if the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Pa.R.C.P. 1035(b); *Marks v. Tasman,* 527 Pa. 132, 134, 589 A.2d 205, 206 (1991). Summary judgment may only be entered in cases which are clear and free from doubt. *Id.* at 134-135, 589 A.2d at 206. If the relevant facts are not in dispute, we may reach a conclusion as a matter of law. *Askew by Askew v. Zeller,* 361 Pa. Super. 35, 42, 521 A.2d 459, 463 (1987).

The moving party has the burden of demonstrating the nonexistence of any genuine issue of fact. *Overly v. Kass,* 382 Pa. Super. 108, 554 A.2d 970 (1989); *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 204, 412 A.2d 466, 468-469 (1979). The motion must be considered in the light most favorable to the non-moving party, with all doubts resolved against the moving party, all reasonable inferences made in favor of the opposing party and all well-pleaded facts of the opposing party accepted by the court. *Thompson, supra* at 204, 412 A.2d at 469; *Dibble v. Security of America Life Insurance Company,* 404 Pa. Super. 205, 207, 590 A.2d 352, 353 (1991); *Lower Lake Dock Company v. Messinger Bearing Corporation,* 395 Pa. Super. 456, 461, 577 A.2d 631, 634 (1990).

The facts as alleged by plaintiff, the non-moving party, are as follows. Plaintiff, Somerset Motel Partners is engaged in the business of operating hotel franchises, one of which is the Somerset Holiday Inn in Somerset, Pennsylvania. Defendant, United States National Bank

in Johnstown is a national banking association. On December 29, 1986, SMP executed a mortgage and security agreement, a mortgage note, and a loan agreement with USNB in the face amount of $2,000,000. The purpose of the loan was to provide funding for Somerset Holiday Inn to remodel the hotel as required by Holiday Inns, Inc. to obtain a permanent franchise.

On April 7, 1987, SMP approached USNB for additional financing in the amount of $500,000. Among the provisions of the executed mortgage and security agreement was the following paragraph:

"(12) *Secondary Liens.* Except for a junior lien in favor of InnKeepers Supply Company, which may be assigned to General InnKeepers Acceptance Corporation, securing a debt of not more than $400,000, mortgagor will not create, incur, assume, or suffer to exist any mortgage, lien, charge, security interest, or other encumbrance upon the premises, improvements, hereditaments, rents, building equipment, or lease other than the liens created hereby, without the prior written consent of mortgagee, which consent mortgagee may in its discretion withhold."

Additionally, a provision in the executed loan agreement stated:

"(13) Borrower covenants and agrees that, from the date of this agreement until this agreement has terminated and until no obligation arising under this agreement shall be outstanding, whichever last occurs, unless the lender shall otherwise consent thereto in writing, it will not, directly or indirectly:

"(a) create, incur, assume, or suffer to exist any indebtedness, except (i) indebtedness to lender, (ii) accounts payable incurred in the ordinary course of business and not more than 60 days past due, (iii) any subordinated indebtedness to or indebtedness guaran-

teed in form and substance satisfactory to lender by any government or governmental agency...; and (iv) purchase money indebtedness incurred in the ordinary course of business for the acquisition of equipment or inventory used in borrower's business provided that such purchase money indebtedness is secured only by the equipment or inventory and proceeds from such equipment or inventory which is used to acquire, and, further, provided that such purchase money indebtedness shall not in the aggregate at any one time exceed $50,000 and all such purchase money indebtedness must be on terms satisfactory to lender who must be given prior notice thereof;...

"(14) In addition to anything contained in the loan documents, the following shall be considered events of default:...

"(f) if borrower fails to fully and timely perform all terms and conditions of the commitment;..."

USNB either failed or refused to respond to the request for additional financing. In the meantime, Jeffrey S. Wilder, a general partner in SMP, provided alternate, unsecured financing to SMP's operating entity, R&W Motel of Somerset, Inc. in the amount of $600,000. R&W is a corporation owned by SMP which received and disbursed all cash transactions, including payment of the USNB mortgage.

On November 9, 1987, SMP approached USNB for approval of additional financing with a financing source other than the one specified in paragraph 12 of the mortgage and security agreement. Again, USNB either failed or refused to respond to the request. Also on November 9, 1987, USNB notified SMP that it was uncomfortable with the loan and encouraged SMP to seek refinancing of the loan elsewhere.

In December 1987, SMP received a permanent franchise from Holiday Inn, Inc. On April 4, 1988, SMP again requested approval of additional financing with a financing source other than the one specified in paragraph 12 of the mortgage and security agreement. On May 5, 1988, USNB denied the request without reason or explanation.

On February 16, 1988, USNB requested audited financial statements of SMP and R&W for the year ending December 31, 1987. Among the provisions of the executed loan agreement was the following requirement:

"(12) Borrower covenants and agrees that, from the date of this agreement until this agreement has terminated and until no obligation arising under this agreement has terminated and until no obligation arising under this agreement shall be outstanding, whichever last occurs, unless the lender shall otherwise consent thereto in writing, borrower will:...

"(m) deliver to lender, when requested by lender, (i) financial statements and information, including statements of financial condition and related statements of income, equity and changes in financial position, for such periods audited, reviewed, compiled, or prepared as lender shall require, (ii) listings of accounts receivable and payable and other obligations and (iii) other material, reports, records, or information;

"(n) deliver to lender copies of all of borrower's federal, state, and local tax returns or other filings;..."

After having exhausted its best efforts in providing USNB with the requested materials, SMP was unable to perform the requirements because USNB had failed to provide certain key information to SMP for inclusion in its financial statements. This material was not supplied to SMP until after June 1, 1988. SMP and R&W then provided federal income tax returns and hired an in-

dependent certified public accountant to satisfy USNB's demands. In October 1988, the CPA began supplying USNB with monthly statements for R&W. In November 1989, SMP provided USNB with reviewed financials from the CPA on R&W for the fiscal year ending January 31, 1989; USNB was provided with SMP's federal income tax return for 1988 in November of 1989. USNB had received monthly profit and loss compilations on R&W since October 1988.

Despite submission of this financial information, USNB filed a confession of judgment action against SMP on May 20, 1988 in the amount of $1,996,759.52 and thereafter began to charge SMP interest at the default rate.

Among the provisions of the executed note was the following paragraph:

"(12) *Confession of Judgment.* Maker hereby irrevocably authorizes and empowers any attorney or the prothonotary or clerk of any court in the Commonwealth of Pennsylvania, or elsewhere, to appear for maker at any time after default hereunder in any action brought against maker on this note at the suit of holder, with or without declaration filed, as of any term, and therein confess or enter judgment against maker for the entire unpaid principal of this note and all other sums paid by holder to or on behalf of maker pursuant to the terms of this note or the other loan documents,..."

Paragraphs 18 and 19 of the mortgage and security agreement provide:

"(18) *Events of Default.* Each of the following shall, at the option of mortgagee, constitute an "event of default" hereunder:...

"(g) If mortgagor shall fail to observe or perform any of the other terms, covenants or conditions hereof

or of any of the other loan documents or if there shall occur an event of default thereunder;...

"(19) *Remedies.*

"(a) Upon the occurrence of any event of default, the entire unpaid balance of principal, accrued interest and all other sums secured by this mortgage or payable under the loan documents shall, at the option of mortgagee, become immediately due and payable without further notice or demand...."

On May 6, 1988, USNB notified SMP that it would consider removing its objections to the additional financing set forth in the mortgage documents upon the condition that repayment of the original loan would be personally guaranteed by the partners of SMP. SMP was no longer able to obtain additional financing from any alternate source.

SMP filed a three-count action against USNB. Count I alleged breach of contract, Count II alleged breach of the covenant of good faith and fair dealing, and Count III alleged economic duress and retaliation. USNB filed preliminary objections to all three counts. This court, by an order dated February 11, 1991, sustained USNB's preliminary objections to Counts I and III. We overruled USNB's preliminary objection to Count II. See *Somerset Motel Partners v. United States National Bank in Johnstown,* no. 51 Civil 1990, Slip op. (C.P., Somerset County, February 11, 1991) (Cascio, J.).

USNB's preliminary objection to Count II, and its present motion for summary judgment, is based on USNB's assertion that SMP has failed to state a cause of action. This assertion is based primarily on a Superior Court case, *Creeger Brick v. Mid-State Bank,* 385 Pa. Super. 30, 560 A.2d 151 (1989), which USNB interpreted as stating that a borrower cannot recover from

a lender in an action for breach of the duty of good faith and fair dealing. In pertinent part, the court stated:

"[t]he duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given by statute or by the terms of its contract. Similarly, it cannot be said that a lender has violated a duty of good faith merely because it has negotiated terms of a loan which are favorable to itself. As such, *a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral or assist in obtaining additional loans from third persons.*" *Creeger, supra* at 36-37, 560 A.2d at 154. (emphasis added)

We interpreted the language in the opinion, specifically the use of the word "generally," to mean that the court recognized the *possibility* that such a refusal may, in appropriate circumstances, give rise to a cause of action. Slip op. at page 9. However, subsequent cases have led us to the opposite conclusion. For example, in *Bohm v. Commerce Union Bank of Tennessee,* 794 F. Supp. 158 (1992), the United States District Court in the Western District of Pennsylvania, applying Pennsylvania law, said:

"In *Creeger* ..., the Superior Court of Pennsylvania held that a borrower does not have a legally cognizable cause of action against a lending institution which, although it has not violated the terms of its loan agreement, has allegedly failed to deal with its borrower in good faith. The court indicated that the duty of good faith has been recognized in limited situations, such as a franchisor/franchisee relationship and an insurer/insured relationship, but refused to extend its application to the creditor/debtor relationship. *Id.* [at 35-36], 560 A.2d at 153-54. The court stated that a lending institution does not violate a separate duty of good faith by adhering

to its agreement with the borrower or by enforcing its legal and contractual rights as a creditor. *Id.* [at 36], 560 A.2d at 154. The duty of good faith imposed upon contracting parties does not compel a lender to surrender rights which it has been given under the terms of its contract. *Id.* A lender has not violated a duty of good faith merely because it has negotiated loan terms which are favorable to itself. *Id.* As such, a lender generally is not liable for harm caused to a borrower by refusing to advance additional funds, release collateral, or assist in obtaining additional loans from third persons. *Id.*

"Therefore, the breach of duty of good faith and fair dealing claim fails *as a matter of law.*" *Bohm* at 163 (emphasis added) See also, *Rutherfoord v. Presbyterian-University Hospital,* 417 Pa. Super. 316, 330, n.6, 612 A.2d 500, 506, n.6 (1992) (Superior Court stated that it is well-settled that a cause of action for breach of good faith and fair dealing is not recognized in Pennsylvania).

Based upon the rulings in these cases, we are now convinced that, in the context of the facts in the case at bar, a cause of action for good faith and fair dealing is not yet recognized in Pennsylvania. Accordingly, we grant defendant's motion.

Furthermore, because a cause of action for good faith and fair dealing is not recognized, we find it unnecessary to determine whether any material issues of fact exist.

## ORDER

And now, April 14, 1993, consistent with the foregoing memorandum, defendant's motion for summary judgment is granted.