## Osborne v. Erie Paint Co.

C.P. of Warren County, no. 700 of 1998.

*Christin E. Horsley,* for plaintiff.
*Lisa Lynn Smith,* for defendants.

MILLIN, *P.J.,* January 24, 2001—This personal injury action, arising out of a December 13, 1996 automobile accident, is before the court on defendants' motion for summary judgment. The defendants seek judgment on the basis that the plaintiff failed to commence this lawsuit within the applicable statute of limitation. Plaintiff initiated this lawsuit by filing a praecipe for a writ of summons on December 28, 1998. Discovery has largely been completed, however, because the whereabouts of defendant Andrew Elliot Overton were unknown until late December of 2000; he had not been deposed prior to the filing of this motion. Nevertheless, this matter is appropriately before the court because defendant Overton's testimony will not be relevant to the question raised herein.

The underlying automobile accident occurred on December 13, 1996, on Route 79 in Erie County, when plaintiff slowed her vehicle in response to traffic slowing ahead of her and defendant Overton struck the rear

of her car. Plaintiff's deposition at pp. 56, 57. Overton, an employee of co-defendant Erie Paint Company at the time, was driving Erie Paint Company's truck. Complaint and answer at ¶¶2, 3, 4, 8.

After plaintiff provided information to the investigating police officer, her uncle took her to the emergency department at Hamot Hospital in Erie where she complained of pain in her shoulder, back, and hips. Plaintiff's deposition at pp. 60-63. X-rays taken that day were negative for any cervical spine fracture and she was diagnosed with a cervical spine sprain, given a cervical collar to wear, and released. Defendants' exhibit B, pp. 1-2.

On the next day, December 14, 1996, plaintiff sought treatment at the emergency department of Warren General Hospital, complaining of continuing pain. Defendants' exhibit C (Warren General Hospital emergency department report of 12/14/96). X-rays taken that day likewise did not disclose a fracture. Defendants' exhibit C (radiology consultation of 12/14/96). She sought treatment from her physician, Dr. Albert Turbessi, on December 16, 1996, who diagnosed plaintiff with a contusion to her left clavicle, prescribing pain medication and a sling as needed. Defendants' exhibit D (progress notes by J. McKown, Pa-C, 12/16/96).

Plaintiff again returned to Dr. Turbessi's office on January 3, 1997, continuing to complain of pain. *Id.* At this point her physician referred her for physical therapy theorizing that the origin of her pain was muscular. Plaintiff received physical therapy until late March of 1997 when she complained to her physical therapist of increasing numbness in her buttocks. Plaintiff's deposition at p. 76.

Dr. Turbessi then ordered a CT scan, which, according to the radiology consultation report, revealed an "expansile destructive process in the right transverse process and pedicle of the body of L/4. Options would include an aneurismal bone cyst, a giant cell tumor, perhaps a Brodie's abcess." Plaintiff's exhibit K. Follow-up tests, consisting of an MRI, a bone scan, and electromyogram, and a CT guided needle biopsy, all produced negative results. Plaintiff's exhibits F. These tests were performed in early April 1997.

In early May, plaintiff was referred to an orthopedic specialist, Dr. Gary Cortina, who reported an impression that plaintiff had an osteoblastoma of the lumbar spine, which he feared was very close to breaking through the pedicle. Plaintiff's exhibit M. On May 14, 1997, Dr. Cortina performed an excisional biopsy with grafting of the right side pedicle lesion. *Id.* Dr. Cortina wrote to plaintiff's counsel, on January 6, 1999, to relate plaintiff's injury to the motor vehicle accident:

"Her work-up [in May 1997] showed what appeared to be an aneurismal bone cyst involving the right pedicle and transverse process. As to your question of whether the accident caused the aneurismal bone cyst, certainly it did not. *But, I suspect that the automobile accident and the trauma sustained during that fractured into the aneurismal bone cyst and began the vicious cycle of pain due to the fracture non-union. . . .* as to your questions, I think her pain is related to the fracture that occurred through the previously pre-existing aneurismal bone cyst within the posterior elements of her lumbar spine." Plaintiff's exhibit M at p. 6.

Plaintiff testified in her own words that she understood Dr. Cortina to suggest that a long-standing benign

tumor in her L/4 vertebrae had been ruptured by the accident and that that caused her pain. She understood that the rupture was forming a cyst, which was the lesion found in the CT scan, and had attached to her spinal cord creating numbness. Plaintiff's deposition at p. 34. Plaintiff admitted in her deposition that her pain was constant from the date of the accident, rather than progressive. Plaintiff's deposition at pp. 21-22. In January 1999, plaintiff was operated on a second time to replace with her own hipbone graft the coral grafting material used in the May 1997 surgery, which had failed to bond. Plaintiff's deposition at p. 42.

In the meantime, plaintiff's economic losses had commenced nearly immediately. Plaintiff missed three days of work on December 16, 17, and 18, 1996. Plaintiff's exhibit G. Dr. Turbessi released her to work on December 19, 1996 in a light duty capacity. Plaintiff's deposition at p. 19-20. In January 1997, she discontinued working or was terminated from her position. She found new employment in June of 1997.

Plaintiff had selected a limited tort automobile insurance policy. Complaint ¶6. Her policy did not contain first-party wage loss coverage. Plaintiff's deposition p. 31. Because her automobile insurance policy was of the limited tort variety, plaintiff was required to substantiate that she had sustained a "serious bodily injury" before claiming any noneconomic damages. 75 Pa. C.S. §1705(d); see also, *Rump v. Aetna Casualty and Surety Co.,* 551 Pa. 339, 343-44, 710 A.2d 1093, 1095 (1998) (quoting section 1705(d) and noting statute requires a serious bodily injury threshold be reached before a limited tort plaintiff may seek recovery of noneconomic damages except in limited circumstances). Plaintiff

claims that she was unaware that she had sustained a serious bodily injury until the date of her first surgery on May 14, 1997. Until that time she alleges that her doctor had diagnosed her with a soft tissue injury that did not rise to the level of a serious bodily injury under the prevailing case law. See *Dodson v. Elvey,* 445 Pa. Super. 479, 501, 665 A.2d 1223, 1234 (1995) (finding no serious bodily injury in an arm injury involving muscle soreness requiring physical therapy, heat, and exercises).

Plaintiff placed into the record a letter dated February 27, 1998, written to her counsel from the defendants' insurance carrier, Erie Insurance Company, in which the claims adjuster expressed the company's opinion that plaintiff's injuries did not exceed the limited tort threshold, pending an updated review of plaintiff's medical records and treatment. Plaintiff's exhibit I.

The defendants[1] filed this motion for summary judgment on November 16, 2000. Initially, defendants argued that the plaintiff knew or reasonably should have known that she had sustained a serious bodily injury from the date of the accident, December 13, 1996, rendering her praecipe filed December 28, 1998, outside the two-year statute of limitation. Defendants conceded that *Walls v. Scheckler,* 700 A.2d 532 (Pa. Super. 1997), *alloc. denied,* 553 Pa. 686, 717 A.2d 1029 (1998), applied the discovery rule in a limited tort case but distinguished plaintiff's constant pain from the date of the accident to the progressive injury sustained by the plaintiff in *Walls.* Plaintiff's response, supplemented with exhibits of medical and employment records, posited that she was unaware that her injury constituted a seri-

---

1. Both defendants have been jointly represented throughout this case.

ous bodily injury until the date of her surgery on May 14, 1997, therefore, and that under the *Walls* rule the statute of limitation should commence to run from that date.

Additionally, defendants contended in their motion for summary judgment that because plaintiff's insurance policy did not provide first-party benefits, her cause of action for economic damages accrued by December 16, 1996, the first date upon which she missed work and suffered economic damages in the form of wage loss. Thus, defendants sought summary judgment on both economic and noneconomic claims claiming that each claim had accrued more than two years before plaintiff tolled the statute of limitations. Significantly, defendants suggested that date upon which the causes of action accrued could be different, *i.e.,* noneconomic claims accrued on December 13, 1996, the date of the accident, and economic claims of wage loss accrued on December 16, 1996, the date plaintiff first missed work.

At oral argument on December 27, 2000, defendants reputiated their position that *Walls v. Scheckler* controlled this case, distinguishing *Walls* on the basis that *Walls* "involved a claim for noneconomic pain and suffering damages only." Supplement to motion for summary judgment of defendants Erie Paint Company and Andrew Elliot Overton at ¶8. Defendants rephrased their theory in support of their motion for summary judgment, specifically taking the position that plaintiff's cause of action accrued on December 16, 1996, when she first suffered economic damage in the form of wage loss. According to this theory, the limitations period expired on December 16, 1998, 12 days before the plaintiff's praecipe was filed.

In support, defendants filed with the court a supplement to motion for summary judgment of defendants Erie Paint Company and Andrew Elliot Overton on or about December 28, 2000. Plaintiff strenuously objected to this recast of defendants' motion at oral argument and in her answer to defendants' supplement to motion for summary judgment. Plaintiff suggests that the discovery rule should apply and there is neither precedent nor rationale for separating economic and non-economic claims for purposes of establishing the applicable limitations period. Plaintiff supplied the court with a copy of the complaint filed in the *Walls* case. The complaint reveals that economic (wage loss) claims were pleaded in that case, although as defendants point out, the precise issue herein was not addressed in the appellate decision.

Defendants in turn filed a reply to plaintiff's answer to defendants' supplement to motion for summary judgment on or about January 11, 2001. Plaintiff responded with an answer to defendants' reply to plaintiff's answer to defendants' supplement to motion for summary judgment on January 11, 2001. The court is now fully apprised of the parties' positions and the matter is ripe for determination.

Summary judgment may be granted in those cases where the pleadings, discovery and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgment should only be entered in those cases which are clear and free from doubt. *Skipworth v. Lead Industries Association,* 547 Pa. 224, 690 A.2d 169 (1997). The court must accept as true all well pleaded facts in the non-moving party's pleadings, and give the non-moving party the benefit of all reasonable

inferences. *Marks v. Tasman,* 527 Pa. 132, 135, 589 A.2d 205, 206 (1991). The court must examine the record in the light most favorable to the non-moving party and resolve all doubt against the moving party as to the existence of a triable issue of fact. *McCarthy v. Dan Lepore & Sons Co. Inc.,* 724 A.2d 938 (Pa. Super. 1998). Given these guiding principles, we turn to the facts.

Both plaintiff and defendants agree on one point: the two-year statute of limitation for personal injury actions, 42 Pa.C.S. §5524, however modified by the discovery rule, will apply alike to all claims whether non-economic or economic.[2] Thus, the date of accrual of economic claims will not differ from the date of accrual of a cause of action for noneconomic claims.

Defendants contend that the date of accrual for all claims arises when the first aspect of any claim becomes apparent to the plaintiff, *i.e.,* in this case when plaintiff first missed work and knew she had at least a wage loss claim under her insurance policy. Thus, defendants suggest that the later discovery of a serious bodily injury is of no relevance in determining the date of accrual of plaintiff's claims for the purpose of determining the applicable statute of limitations.

Plaintiff, by contrast, posits that the discovery rule must apply and the economic cause of action in essence is tied to the noneconomic cause of action. Plaintiff contends that the practical ramifications of defendants' theory would create difficult, confusing, and inefficient processing of litigation in limited tort cases. A plaintiff

---

2. The parties do not agree on the relevant basis for the two-year statute of limitation. Defendants cite to subparagraph 7 of 42 Pa.C.S. §5524 whereas plaintiff cites to subsection 2. Plaintiff is correct. *Walls v. Schekler,* 700 A.2d 532, 533 (Pa. Super. 1997).

subject to the limited tort necessity to prove serious bodily injury before bringing noneconomic claims would have filed suit for economic claims, which might be well advanced by the time a serious bodily injury were discovered. Pleadings, discovery, and settlement negotiations might all need to be recommenced. Plaintiff raises the possibility that a case could be tried on an economic basis before the serious nature of an injury could be determined and thus forever bar plaintiff's cause of action for noneconomic damages under a limited tort policy.

Defendants cite cases for the proposition that a cause of action arises when a plaintiff becomes aware of the first item of compensable injury. See *e.g., Romah v. Hygienic Sanitation Co.,* 705 A.2d 841, 857-58 (Pa. Super. 1997), *aff'd,* 558 Pa. 378, 737 A.2d 249 (1999) ("The statute begins to run when the injured party 'possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress' . . . ."); *Sterling v. Saint Michael's School for Boys,* 442 Pa. Super. 437, 440, 660 A.2d 64, 66 (1995); *alloc. denied,* 543 Pa. 695, 670 A.2d 142 (1995) (discovery rule inapplicable to plaintiff who knew he had been hit in the eye with a shoe and injured, but was unaware of the extent of that injury until some weeks later); *Bradley v. Ragheb,* 429 Pa. Super. 616, 623-24, 633 A.2d 192, 196 (1993), *alloc. denied,* 540 Pa. 627, 658 A.2d 791 (1994) (rejecting the contention of a medical malpractice plaintiff that the discovery rule should operate to commence the running of the limitations period from the date that plaintiff learned of the risks of late diagnosis of cancer, when plaintiff had failed to inquire into those risks when diagnosed); *Saft v. Up-*

*per Dublin Township,* 161 Pa. Commw. 158, 161-62, 636 A.2d 284, 286 (1993) (home buyers' causes of action based upon governmental defendants' alleged failures prior to the passage of the governmental immunities law did not accrue until buyers purchased their homes and so were barred by law).

These cases are not persuasive as they do not concern the accrual of causes of action in limited tort cases. They do not shed light on the difficulty raised in this case by a statute that operates to defer the accrual of a cause of action until plaintiff can establish a threshold level of injury.

More persuasive is the case of *Bond v. Gallen,* 503 Pa. 286, 469 A.2d 556 (1983), in which the Supreme Court of Pennsylvania held that "the two-year statute of limitations on tort actions allowed by the No-Fault Act does not begin to run until the claimant knows or, exercising reasonable diligence, should know that the claimant's medical and/or dental losses exceed a threshold specified in section 301(a) of the [No-Fault] Act." *Bond,* 503 Pa. at 290, 469 A.2d at 558. The court was not unaware of the difficulty that this holding might create for a defendant in dealing with problems of proof long after an accident. Because the statutory threshold created the possibility that a claimant might not discover a cause of action until sometime after the accident, the cause of action could not accrue from the date of the accident.

The Motor Vehicle Financial Responsibility Law likewise creates thresholds. Section 1705(d) requires a limited tort plaintiff to reach a "serious bodily injury" threshold before she can make a claim for noneconomic damages. Section 1712 provides that a claimant for first-party benefits cannot recover wage loss economic losses

until after the claimant has reached a threshold of five days of lost work. Interestingly, had plaintiff herein been a pedestrian struck by defendant Overton, and therefore eligible to collect first-party economic benefits, her right to those benefits would not have accrued until she had missed five days of work. As she only missed three days in December 1996, the limitations period would not have commenced to run in December 1996.

We are unwilling to hold that the statute of limitation commences to run when a plaintiff suffers her first economic loss, no matter how de minimis. This rule would defeat the purpose of the limited tort threshold, requiring a lawsuit to be filed defensively even where the damages do not justify the costs of the suit. Moreover, the progression of litigation of limited tort cases will not be served by requiring a race to the courthouse with subsequent delays for amendments to the pleading, reopening discovery periods and the like. Finally, a plaintiff should not be placed in the difficult choice of deciding whether to file suit for minimal economic damages, which commences the running of the statute of limitations and may preclude a later amendment of the pleadings for noneconomic damages, or foregoing economic damages upon the speculation that a minor injury may later be determined to reach the serious bodily injury threshold. In a limited tort case, where the plaintiff must meet a statutory threshold of serious bodily injury to bring a claim for noneconomic damages, all causes of action accrue on the date that the noneconomic cause of action accrued.

We now turn to the application of the discovery rule to plaintiff's noneconomic claim. A statute of limitation may be tolled in a situation where a plaintiff is unable, despite the exercise of due diligence, to discover

her injury or its cause within the requisite limitation period. *Pocono International Raceway v. Pocono Produce,* 503 Pa. 80, 84-85, 468 A.2d 468, 471 (1983). Moreover, because plaintiff had elected limited tort coverage, she was prohibited from raising a noneconomic claim until she could prove a serious bodily injury. *Walls v. Scheckler,* 700 A.2d 532, 533 (Pa. Super. 1997). Injuries consisting of muscle bruising, soreness and associate pain would not have sufficed to meet the serious bodily injury threshold. *Id.; Dodson v. Elvey,* 445 Pa. Super. 479, 484, 665 A.2d 1223, 1225 (1995).

Plaintiff has produced sufficient facts to raise a genuine issue of material fact concerning whether she should have understood the serious nature of her injury prior to her first surgery on May 14, 1997. In this case, the plaintiff did not have a cause of action for noneconomic damages as a result of the accident; she necessarily had to ascertain that her injury met the statutory threshold of a serious bodily injury. A jury could conclude from the evidence presented that the plaintiff did all that due diligence required: she immediately sought treatment at a hospital, returned to another hospital the following day, received two x-rays revealing no fractures, sought treatment from her doctor within the first week following the accident, and pursued the physical therapy recommended by her physician until the pain she was experiencing degenerated into numbness. A jury could conclude that the plaintiff underwent additional tests in early April 1997, but did not receive a definitive diagnosis until after her surgery on May 14, 1997.

A genuine issue of material fact having been raised as to when plaintiff, in the exercise of due diligence, should have known that she had suffered a serious bodily injury.

For the foregoing reasons, the court enters the following order:

ORDER

And now, January 24, 2001, defendants' motion for summary judgment is denied.