**Gettig Engineering Manufacturing Company v. Charles D. Snyder & Son Inc.**

34

C.P. of Centre County, no. 2001-0231.

*John W. Blasko* and *Darryl R. Slimak,* for plaintiff.
*Bret J. Southard,* for defendant.
*Tracey G. Benson* and *Scott C. Etter,* for additional defendant.

BROWN JR., *P.J.,* April 23, 2004—Presently before this court for consideration is defendant Charles D. Snyder & Son Inc.'s second motion for partial summary judgment. The court determines genuine issues of material fact exist regarding whether plaintiff Gettig Engineering Manufacturing Company's recovery for damages in its breach of contract claim is limited by the "limitation of liability" clause found in paragraph 6(b) of the "Standard terms and conditions of sale" attached to the "Quotations" prepared by defendant and dated September 27, 1993, February 25, 1994, and February 25, 1994.[1]

---

1. The September 27, 1993 quotation is attached to defendant's second motion as exhibit D, the first February 25, 1994 quotation is attached to defendant's second motion as exhibit G, and the second February 25, 1994 quotation is attached to defendant's second motion as exhibit H.

## BACKGROUND

Plaintiff filed an amended complaint on September 6, 2001, making claims of negligence, strict liability, breach of express warranty, breach of implied warranty and breach of contract against defendant.[2] According to the complaint, beginning in 1994 and continuing through 2001, plaintiff contracted with defendant for silver and the plating of silver on electrical contacts for a plunger switch used by plaintiff in wiring assemblies/wiring harnesses. Acting pursuant to the parties' contract, plaintiff sent the electrical contacts to defendant, defendant was to silver plate the contacts with .0003 to .0005 inches of silver and send the silver plated contacts back to plaintiff along with a material certificate certifying the contacts were plated with .0003 to .0005 inches of silver.

According to plaintiff's complaint, the electrical contacts were then incorporated into switches. The switches were subsequently incorporated into wiring assemblies/wiring harnesses by plaintiff. Plaintiff sold the wiring harnesses to the Croty Corporation, who incorporated the wiring harnesses into a vanity mirror and sun visor assembly. Croty then sold the completed assemblies to General Motors, who installed the assemblies into its vehicles.

According to the complaint, on or about June 1999, Croty notified plaintiff the wiring harnesses in the sun visors were not functioning properly as a result of intermittent operation and opening of switches caused by defective electrical contacts.

---

2. By opinion and order dated April 22, 2004, plaintiff's claims of negligence and strict liability were dismissed from the amended complaint.

According to plaintiff, the electrical contacts were rendered nonfunctional because of a defect in defendant's silver plating process. General Motors had to remove and replace the wiring harnesses. Croty paid General Motors damages for the removal and replacement of the defective assemblies. Plaintiff indemnified Croty for the damages and now plaintiff is seeking compensation from defendant for said damages.

On June 16, 2003, defendant filed the instant second motion. According to defendant, it prepared three quotations for plaintiff, at its request, for the silver plating of plaintiff's electrical contacts. The quotations are dated September 27, 1993, February 25, 1994, and February 25, 1994. Defendant maintains the contract between the parties includes all the terms and conditions stated in these three quotations. Said quotations include "Standard terms and conditions of sale" printed on the back side of the document.

Paragraph 6(b) of the standard terms and conditions of sale contains a "limitation of liability" clause, which defendant maintains limits its liability for any loss or damage suffered by plaintiff. Paragraph 6(b) provides recovery is limited to "the customer's cost of the material or merchandise or our processing and finishing price for such material, whichever amount is the lesser." Defendant argues plaintiff accepted all of the terms contained within the quotations by submitting various purchase orders in response to the quotations. Defendant argues partial summary judgment is warranted because plaintiff is limited in its recovery of damages by paragraph 6(b).

Oral argument was held on April 20, 2004.[3] Both parties have submitted briefs.

## DISCUSSION

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, admissions and any affidavits show no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Marks v. Tasman,* 527 Pa. 132, 134, 589 A.2d 205, 206 (1991); Pa.R.C.P. 1035.2. The moving party has the burden of proving no genuine issue of material fact exists. *Marks,* 527 Pa. at 135, 589 A.2d at 206. The court must examine the record in the light most favorable to the non-moving party, and resolve all doubts regarding a genuine issue of material fact against the moving party. *Id.* Summary judgment may be granted only where the right to judgment is clear and free from doubt. *Id.* at 134-35, 589 A.2d at 206.

Defendant maintains partial summary judgment in its favor is warranted based upon the limitation of liability clause in paragraph 6(b). Defendant argues the quotations manifest defendant's offer to bargain and the pur-

---

3. On April 9, 2003, plaintiff filed a motion for partial summary judgment. On April 30, 2003, plaintiff filed a motion in limine. On May 27, 2003, defendant filed a cross-motion for partial summary judgment. The court held oral argument on plaintiff's motion for partial summary judgment and defendant's cross-motion on August 28, 2003. At said oral argument, both parties agreed to reserve argument on defendant's second motion and plaintiff's motion in limine until a later date to be set by the court. The court has disposed of plaintiff's motion for partial summary judgment and defendant's cross-motion for partial summary judgment by separate opinion and order. The court will dispose of plaintiff's motion in limine by separate opinion and order.

chase orders manifest plaintiff's acceptance of these offers. Defendant submits plaintiff, by submitting the purchase orders in response to defendant's offers without attempting to negotiate or change the terms, accepted all the terms contained within the quotations, including the limitation of liability provision contained in paragraph 6(b). Defendant maintains plaintiff continued to accept the terms contained within the quotations with each subsequent purchase order submitted by plaintiff, up to and including the year 1999, when the problems with the contacts allegedly developed. Defendant cites the Superior Court of Pennsylvania's holding in *Beaver Valley Alloy Foundry Co. v. Therma-Fab Inc.,* 814 A.2d 217 (Pa. Super. 2002), for support of its argument.

Plaintiff raises numerous arguments why defendant's second motion should be denied. Each of plaintiff's arguments are based upon plaintiff's assertion that there are outstanding issues of material fact regarding whether the contract between the parties includes the language contained within paragraph 6(b).

Plaintiff argues the changes in the purchase orders submitted by plaintiff in 1999 (*i.e.,* different price terms and specifications), coupled with the substantial passage of time between defendant's original quotations in 1993 and 1994 and plaintiff's purchase orders in 1999, indicate that an issue of fact exists as to whether or not each of the 1999 purchase orders in fact constituted new offers, rather than an acceptance of any prior quotation by defendant. If the purchase orders submitted in 1999 were offers which defendant accepted by silver plating the contacts, then the limitation of liability provision in paragraph 6(b), which was last submitted for plaintiff's ac-

ceptance in 1994, is no longer part of the contract between the parties in 1999 when the defective contacts were discovered.

Because the court agrees with plaintiff on this point and determines a genuine issue of material fact exists regarding whether or not plaintiff is limited in its recovery of damages by paragraph 6(b), the remainder of plaintiff's arguments in opposition to defendant's second motion will not be discussed herein.[4]

The court has carefully reviewed the three quotations prepared by defendant in 1993 and 1994, along with paragraph 6(b), and the purchase orders submitted by plaintiff from 1994 to 1999. The court agrees, based upon the *Beaver Valley* case, that the quotations submitted in 1993 and 1994 were sufficiently complete to be offers. The court also agrees plaintiff's submission of purchase orders in 1994 in response to the quotations manifested its acceptance of defendant's offers. However, the court determines the evidence of record does not clearly resolve the question of whether the subsequent purchase orders submitted by plaintiff in 1998 and 1999 were also an acceptance of defendant's offers and the terms and conditions contained within said offers.

First, the court determines the quotations submitted by defendant to plaintiff in 1993 and 1994 were offers. Referring to the document in question as a "quotation" does not mean it is not an offer. *Beaver Valley,* 814 A.2d at 222. An offer has been defined as "a manifestation of a willingness to enter into a bargain, so made as to jus-

---

4. Plaintiff's arguments in opposition to the second motion may be found in plaintiff's response to defendant's second motion, filed August 27, 2003.

tify another person in understanding that his assent to that bargain is invited and will conclude it." *Id.* "[I]n determining whether an offer is made[,] relevant factors include the terms of any previous inquiry, the completeness of the terms of the suggested bargain, and the number of persons to whom a communication is addressed." *Id.*

Here, the relationship between the parties began when plaintiff sent defendant a "Quotation request only," dated September 22, 1993.[5] In the quotation request, plaintiff requests defendant send it a quotation for the price and delivery of silver plating on "Part #2133 contacts" in quantities of between "50,000 pcs. to 250,000 pcs." In response, defendant submitted the quotation dated September 27, 1993. Said quotation contains material terms, such as the subject matter, price, payment, delivery, as well as paragraph 6(b) and the other standard terms and conditions of sale. The quotation was specifically prepared for plaintiff, at plaintiff's request, and was not communicated to any other persons. Defendant thereafter submitted two other quotations to plaintiff, which were virtually identical to the first quotation, except for the price term. The court determines the quotations manifest defendant's willingness to enter into a bargain with plaintiff for the silver plating of plaintiff's contacts according to the specified terms. Consequently, the quotations were offers to bargain directed to plaintiff.

In response to the quotations, plaintiff submitted purchase orders dated January 12, 1994, January 19, 1994, February 22, 1995 and March 8, 1994. Said purchase orders requested a specific quantity of plaintiff's con-

---

5. Attached as exhibit C to the second motion.

tacts be silver plated with .0003 to .0005 inches of silver. The court determines these purchase orders were a manifestation of plaintiff's acceptance of the terms contained within defendant's quotations. Thus, the contractual relationship at the time consisted of the quotations prepared by defendant, which include the limitation of liability clause in paragraph 6(b), and the purchase orders prepared by plaintiff.

The parties agree from 1994 to 1999 defendant and plaintiff maintained an on-going relationship for the silver plating of plaintiff's contacts. Plaintiff alleges the breach of contract claim concerns contacts which were silver plated by defendant in 1999. There is no evidence any more quotations were prepared and submitted by defendant to plaintiff after the second February 25, 1994 quotation.

There is evidence plaintiff prepared and submitted at least four subsequent purchase orders to defendant. Each of the four purchase orders, which are dated in 1998 and 1999, contain price terms materially different from the price terms stated in the quotations prepared by defendant almost five years earlier. None of the purchase orders refers to or incorporates the provisions contained within paragraph 6(b). There is no evidence these purchase orders were submitted as an acceptance of defendant's quotations offered almost five years earlier. Indeed, the time lapse and the different price terms indicate these later purchase orders were not submitted in response to the quotations prepared by defendant in 1993 and 1994, but could be offers to bargain prepared by plaintiff and submitted to defendant for defendant's ac-

ceptance. Consequently, the court determines defendant has not met its burden of proving no genuine issues of material fact exist regarding whether or not plaintiff is limited in its recovery of damages in its breach of contract claim by the limitation of liability clause in paragraph 6(b).

Accordingly, the following is entered:

## ORDER

And now, April 23, 2004, upon consideration of defendant Charles D. Snyder & Son Inc.'s second motion for partial summary judgment and after consideration of the written and oral arguments of the parties, said motion is denied.