**Bridgeman v. Cruz**

*Jason R. Ohlinger,* for plaintiff.
*Daniel D. Stofko,* for defendant.

WILLIAMSON, *J.*, May 18, 2012—This matter comes before us on a motion for partial summary judgment in a tort liability action filed by Danny Cruz and Mary Rodriguez (hereafter, "defendants"), requesting Alexandra

Bridgeman (hereafter, "plaintiff"), be precluded from recovering non-economic damages pursuant to the Motor Vehicle Financial Responsibility Law.

Plaintiff commenced this action by filing a complaint on July 27, 2010, alleging that defendant Cruz was negligent in his operation of defendant Rodriguez's motor vehicle in that defendant Cruz collided into the rear of a motor vehicle operated by a Ms. Sylvette Hartorth, causing her vehicle to swerve into oncoming traffic into the path of plaintiff's vehicle. Plaintiff also alleges that defendant Rodriguez negligently entrusted defendant Cruz with the motor vehicle and that defendant Rodriguez knew or should have known that she was creating an appreciable risk of harm to other drivers lawfully using the roadways. On November 4, 2010, defendants filed an answer to plaintiff's complaint and new matter. Defendants filed a motion for partial summary judgment and a brief in support on March 9, 2012, requesting this court grant summary judgment on the limited tort threshold since plaintiff failed to show the injury she suffered constituted a "serious" injury, as defined by the Motor Vehicle Financial Responsibility Law. On April 9, 2012, plaintiff filed an answer in opposition to defendants' motion for partial summary judgment. The matter was placed on the May argument list and both parties appeared before this court on May 7, 2012, to present their respective arguments. After a review of the pleadings, we are now ready to dispose of this matter.

## DISCUSSION

Defendants filed a motion for partial summary judgment alleging that plaintiff failed to establish that she

is entitled to non-economic damages since her injury does not constitute a "serious" injury as defined by the Motor Vehicle Financial Responsibility Law. Defendants assert that plaintiff only sustained minor injuries and visited with a chiropractor who informed plaintiff "not to overdo it." Defendants allege that plaintiff's injuries do not constitute a "serious" injury since she never claimed disability from work, never underwent physical therapy, and never sought treatment other than visiting a chiropractor.

Plaintiff asserts that she suffered a serious impairment in her ability to walk, which lasted for several weeks after the alleged accident and completely limited her ability to perform basic tasks without assistance. During argument, counsel for plaintiff stated that plaintiff could not walk without crutches and required assistance in everyday tasks (such as bathing), for a month after the accident. Moreover, plaintiff states that she still suffers from residual pain and limitations due to her neck pain.

Since defendants are seeking partial summary judgment, we must review the record in the light most favorable to the non-moving party, plaintiff, and all doubts as to the existence of a genuine issue of material fact must be resolved against defendants. *Washington v. Baxter,* 553 Pa. 434, 441, 719 A.2d 733, 737 (1998), citing, *Pennsylvania State University v. County of Centre*, 532 Pa. 142, 144, 615 A.2d 303, 304 (1992). Summary judgment will only be granted in cases that are free and clear from doubt. *Id.*, citing, *Marks v. Tasman,* 527 Pa. 132, 589 A.2d 205 (1991). Accordingly, the non-moving party "must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence

establishes that there is no genuine issue of material fact" and the moving party is thus entitled to judgment as a matter of law. *Id.*, quoting, *Ertrel v. Patriot-News Co.,* 544 Pa. 93, 98, 674 A.2d 1038, 1042 (1996).

Pursuant to Section 1705(d) of the Motor Vehicle Financial Responsibility Law,

> (d) "Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for any noneconomic loss..." 75 Pa.C.S.A. § 1075(d).

A serious injury is defined as a "personal injury resulting in death, serious impairment of body function or permanent serious disfigurement." 75 Pa.C.S.A. §1702. Generally, our courts have held that the threshold determination of whether a party qualifies for non-economic damages pursuant to 75 Pa.C.S.A. § 1705(d) is not one that should be made routinely by a trial court judge, but rather should be left to a jury. *Washington,* at 740. Where "reasonable minds could not differ on the issue of whether a serious injury has been sustained," however, the trial court may determine that non-economic damages are not appropriate and sustain a summary judgment. *Id.* Therefore, the ultimate determination of the seriousness of the injury should be left for the jury "in all but the clearest of cases." *Id.*

To determine whether reasonable minds would differ as to the severity of the injury, the court in Washington created

a two prong inquiry. The trial court must first consider "what body function, if any, was impaired because of the injuries sustained in a motor vehicle accident," and then second, whether the impairment of the body function is serious. *Id.*, quoting, *DiFranco v. Pickard*, 398 N.W.2d 896, 901 (Mich. 1986). It is essential, however, that the focus is not on the injuries themselves, "but on how the injuries affected a particular body function."[1] *Id.* Finally, the court outlined the following factors to be considered: "the extent of the impairment, the length of time the impairment lasted, the treatment required to correct the impairment, and any other relevant factors." *Id.*

Two prominent Superior Court cases can be used to establish the difference between a serious injury and a minor injury. In *Furman v. Shapiro*, the plaintiff was injured in a motor vehicle accident and was subsequently diagnosed with bulging discs, which was determined to be a permanent condition by her physician. 721 A.2d 1125, 1127 (Pa. Super. 1997). At the time of the plaintiff's deposition, which was taken three years after the accident, the plaintiff stated that she still had problems walking, that her pain continued to persist and that she had to limit her work as a manicurist from full-time to part-time because she is unable to sit in one position for an extended period of time. *Id.* Furthermore, the plaintiff stated that she underwent physical therapy and performed home exercises to help alleviate the pain. *Id.* Based on these statements, the Furman Court determined that the plaintiff could

---

1. Prior to the creation of the two prong analysis in Washington, our Superior Court noted that the issue is not whether the individual experiences pain, but whether "there has been a serious impairment in her functioning as a result of the pain." *Murray v. McCann*, 658 A.2d 404, 408 (Pa. Super. 1995).

have suffered a serious injury and the issue of whether the plaintiff was entitled to non-economic damages was a question for the jury to decide.

In *McGee v. Muldowney*, the court upheld the defendant's motion for summary judgment since it was not satisfied that reasonable minds could differ as to the severity of the injury, 750 A.2d 912, 914 (Pa. Super. 2000). In McGee, the evidence established that the plaintiff went to the emergency room after the accident, was diagnosed with a cervical strain and cervical sprain, and was discharged with a prescription for Tylenol. *Id.* The plaintiff followed up with a physician a couple of days later when the pain had not subsided and an x-ray and MRI were conducted, both of which supported the earlier diagnosis of cervical strain and cervical sprain. *Id.* The plaintiff underwent physical therapy, sought two orthopedic evaluations and was examined by an orthopedic surgeon on three separate occasions. *Id.* During discovery the plaintiff stated that he was able to continue working full-time despite the fact that he had trouble lifting heavier items, but also admitted that his employer was not aware of that inability. *Id.* Since the plaintiff only sought treatment during the six months following the accident and did not seek any additional medical attention for the next five and one-half years, the McGee court was not satisfied that reasonable minds would differ on the severity of the plaintiff's injuries. Highlighting the fact that the plaintiff was able to return to full time employment in his trade without restriction and reviewing the plaintiff's medical history, the court concluded that the plaintiff failed to establish that his injuries resulted in "such substantial interference with any bodily function as to permit a conclusion that the

injuries have resulted in a serious impact on his life for an extended period of time." *Id.* at 915, consequently, the court held that the plaintiff was unable to establish that he suffered a serious injury such that he would be entitled to non-economic damages.

We find that the case before this court is more similar to that of McGee than Furman. A review of the pleadings and deposition establishes the following facts: At the time of the accident plaintiff worked for a real estate company in the sales department and conducted closings on behalf of the company. After plaintiff's accident, plaintiff was unable to perform her duties at work for a period of three weeks, after which time, she was able to return to work full time without any restrictions. On the day of the accident plaintiff experienced pain in her left knee, neck and back, and had moderate burn marks on her arm from the deployment of the air bag. Plaintiff was transported to Pocono Medical Center by an ambulance where x-rays were conducted to determine the extent of her injuries. She was discharged from the hospital that same day with painkillers and crutches and was told to continue icing her left knee.

The following three weeks plaintiff was restricted in her movements in that she had to rely on her crutches to be mobile and she was unable to use stairs or drive a car without experiencing pain in her left knee. Plaintiff received chiropractic treatment from Dr. Epstein, who ordered an MRI test of her neck and knees to be performed on September 22, 2008. Plaintiff had an MRI of her shoulder in November 2008. Plaintiff treated with Dr. Epstein approximately three times a week for a number of weeks and then began treating with Dr. John Miller,

since his office was closer to her home. Plaintiff continued to see Dr. Miller three times a week for approximately three to four months. Her chiropractic appointments with both doctors consisted of manipulation and massage-type treatments. Plaintiff never received physical therapy for her injuries and only sought chiropractic relief. All treatment was terminated within four months after the accident.

Plaintiff was never restricted by her physicians as to what type of activities she could participate in and was only told not to "overdo it." She admits that as of her deposition on December 28, 2011 her injuries do not impair her ability to work nor do they limit her ability to participate in daily activities and/or hobbies. Plaintiff attached an undated and unverified copy of plaintiff's responses to interrogatories to her answer to summary judgment, alleging difficulty doing certain things. However, since she notes none of this in her deposition of December 28, 2011, nor are the responses dated or verified by the plaintiff, the court cannot conclude there are lingering limitations. Nor is there documentation in the record by the plaintiff of any lengthy interruption of daily activities. The unverified and undated response to interrogatories is insufficient for the court to consider in a summary judgment motion.

Plaintiff does not have any outstanding medical bills resulting from this accident, nor any ongoing care. The only residual pain resulting from the accident is neck pain, which plaintiff states impairs her ability to sleep. Plaintiff has not, however, sought the advice of a physician regarding that problem and is no longer obtaining chiropractic treatments.

Applying the two prong test created in Washington and relying on the discussions in Furman and McGee, we find that reasonable minds will not differ on the severity of plaintiff's injury and as such, plaintiff is not entitled to seek non-economic damages for her injuries. The first prong of the Washington test requires us to look at the injuries sustained as a result of the accident. Plaintiff asserts she sustained injuries to her left knee, neck and back. Despite x-rays and MRIs, there was no evidence submitted to the record of the medical diagnosis, if any, of these injuries. The second prong asks whether the impairment of her knee, back and neck was serious. Based on the allegations in the pleadings and admissions in her deposition, we conclude that the impairments are not serious and that plaintiff's injury does not constitute a "serious injury" as defined by the Motor Vehicle Responsibility Law.

Plaintiff's injuries are similar to those suffered by the plaintiff in McGee. Like the plaintiff in McGee, plaintiff was taken to the emergency room where x-rays were taken and plaintiff was discharged that same day with a prescription for painkillers and crutches to assist her in walking.[2] As was the case in McGee, plaintiff sought additional treatment from a physician, more specifically a chiropractor, when her pain failed to subside. While the plaintiff in McGee visited with orthopedic surgeons, plaintiff only received treatment from a chiropractor and did not seek additional treatment from any other

---

2. We recognize that the plaintiff in McGee was not provided crutches but we are not satisfied that plaintiff's reliance on her crutches increases the severity of her injury to a significant degree since plaintiff has failed to present any evidence that she was ordered to use those crutches for a determinable period of time.

type of physician. There were no records or supporting documentation for the court to consider as to the diagnosis or type of injuries suffered by the plaintiff. Plaintiff was immediately discharged from the hospital after evaluation, and despite x-rays and multiple MRI tests, the plaintiff had limited treatment. Furthermore, plaintiff's counsel represented to this court during argument that plaintiff held herself out of work because of her reliance on crutches for a period of three weeks. There was no evidence plaintiff was physically unable to work. Plaintiff stated during her deposition that neither Dr. Epstein, nor Dr. Miller, placed restrictions on her ability to work or participate in daily activities, Therefore, the decision to stay out of work was plaintiff's sole decision and plaintiff was not required to seek approval from her physician before she could return to work. Plaintiff testified in her deposition that as of that date, December 28, 2011, there were no limitations on her daily activities. There was no other verified documentation that plaintiff suffered a loss of daily activities for any lengthy time period.

Consequently, we find that reasonable minds would not differ on the severity of plaintiff's injuries and sustain defendants' motion for summary judgment. Accordingly, plaintiff is precluded from seeking non-economic damages.

## ORDER

And now, this May 18, 2012, the defendants' motion for partial summary judgment is granted.

Plaintiff is precluded from seeking non-economic damages.