**Stewart v. O.C. Cluss Lumber Co.**

*Harry Paras,* for plaintiff.
*John Zotter,* for defendant O.C. Cluss Lumber.
*Bill Haushalter,* for defendant Crespo.

KWIDIS, *J.,* February 9, 2009—Before this court is defendant James Crespo's, individually and trading and doing business as Crespo Contracting Company, motion for summary judgment. No material issues of fact exist regarding the defendant Crespo's liability, and therefore, the motion is granted.

Defendant O.C. Cluss Lumber Company Inc., a subcontractor of defendant Kate Inc., subcontracted to defendant Crespo the framing work on building number 1 in a complex of new condominiums, the Fairways at Krendale, being built in Butler, Pennsylvania. In addition to the general framing work, defendant Crespo was subcontracted to construct storage areas and install shingles, weather guard and skylights in building number 1, as well as move and extend walls in the kitchen, bathrooms,

and hallways, cut and move doorways in garages, and move studs for electrical panels.

Defendant O.C. Cluss also subcontracted to L. Stewart Homes the painting work at the Fairways at Krendale project. Jeffrey Stewart, now deceased, was an employee of L. Stewart Homes Inc.

On March 29, 2006, Jeffrey Stewart, deceased, was painting the ceiling of unit 206 when he fell from an unprotected second floor landing/balcony approximately nine to 10 feet to the concrete floor below. When he fell, Mr. Stewart struck his head, crushing his facial bones. His injuries led to his death the following day, March 30, 2006.

At the time of the accident, no railings, guard rails, fall protection, and/or other protective barriers were in place to prevent workers along the second floor balcony from falling to the floor below.

On June 17, 2006, plaintiff Renee Stewart, as the administratrix of the estate of Jeffrey Stewart, filed a complaint alleging, in part, that defendant Crespo was negligent because: (1) he failed to install temporary guard rails and/or railings along the balcony and/or removed the same prior to the decedent's working in that area, in violation of defendant Crespo's contract, duties, and responsibilities as the framing subcontractor; and (2) he failed to properly supervise, manage, or exercise control over the work site so that it was safe for the workmen.

On September 22, 2008, defendant Crespo filed a motion for summary judgment alleging that no material question of fact existed. Specifically, defendant Crespo alleged that he had no contractual obligation to erect a

temporary railing during the construction of unit 206. He also alleged that he had completed his work in unit 206 by the end of January 2006, which was approximately two months prior to the accident, and therefore, that he did not have possession or any control of the property on March 29, 2006.

Under the Pennsylvania Rules of Civil Procedure, summary judgment may be entered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). The Supreme Court explained that "[t]he record must be viewed in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Marks v. Tasman*, 527 Pa. 132, 135, 589 A.2d 205, 206 (1991) (citing *Davis v. Pennzoil Co.*, 438 Pa. 194, 264 A.2d 597 (1970)). The Supreme Court further elaborated that "where the facts can support conflicting inferences, it cannot be said that the case is free and clear from doubt and thus ripe for summary judgment." *Washington v. Baxter*, 553 Pa. 434, 447 n.10, 719 A.2d 733, 740 n.10 (1998) (citing *Marks, supra* at 135, 589 A.2d at 206).

For purposes of determining whether the grant of summary judgment is precluded, the court must consider the following factors: (1) whether the plaintiff has alleged facts sufficient to establish a prima facie case; (2) whether there is any discrepancy as to any facts material to the case; and (3) whether granting summary judgment would result in the trial court usurping the role of the jury by

resolving material issues of fact. *Dudley v. USX Corporation*, 414 Pa. Super 160, 606 A.2d 916 (1992); *Swords v. Harleysville Insurance Companies*, 584 Pa. 382, 883 A.2d 562 (2005).

Under these guidelines, this court has proceeded to analyze the controlling cases involving subcontractor liability.

To establish a cause of action in negligence there must be a duty recognized by the law; breach of that duty by the defendant; a causal connection between the defendant's breach of that duty and the resulting injury; and actual loss or damage suffered. *Reilly v. Tiergarten Inc.*, 430 Pa. Super. 10, 14, 633 A.2d 208, 210 (1993). In Pennsylvania, a party to a contract has two duties: a contractual duty and a legal duty to act without negligence towards both the other party to the contract and third parties. See *Prost v. Caldwell Store Inc.*, 409 Pa. 421, 425, 187 A.2d 273, 275 (1963); *Bisson v. John B. Kelly Inc.*, 314 Pa. 99, 110, 170 A. 139, 143 (1934); *St. Clair v. B&L Paving Company*, 270 Pa. Super. 277, 279, 411 A.2d 525, 526 (1979).

Specifically, the Pennsylvania Supreme Court has held that a subcontractor owes to the employees of other subcontractors on the same site the same legal standard of care due to a business visitor from a possessor of land. *McKenzie v. Cost Brothers Inc.*, 487 Pa. 303, 307-308, 409 A.2d 362, 364 (1979). A possessor of land owes to business visitors the duty to protect against conditions that he or she: (1) knows of or by the exercise of reasonable care would discover and should realize they pose an unreasonable risk of harm to such visitors; and (2) should expect that visitors will not discover or realize

the danger, or will fail to protect themselves against it; and (3) fails to exercise reasonable care to protect such visitors against the danger. *Id.* at 308 n.3, 409 A.2d at 364 n.3.

The Superior Court applied these principles in the case of *Weiser v. Bethlehem Steel Corporation,* 353 Pa. Super. 10, 508 A.2d 1241 (1986). In the *Bethlehem Steel* case, the plaintiff was injured when he fell down a temporary elevator shaft from the 12th floor of a high rise building in Philadelphia, Pennsylvania. *Id.* at 13-14, 508 A.2d at 1243. The plaintiff, who was an employee of Fabricated Steel, a subcontractor of the general contractor, slipped and fell down the shaft as no temporary planking was in place to protect him. *Id.* The plaintiff brought suit against Bethlehem Steel, another subcontractor, alleging that it had acted negligently in removing the planking over the elevator shaft on the 12th floor when it had completed its work on that floor. *Id.*

Having determined that Bethlehem Steel owed no contractual duty to the plaintiff, the Superior Court analyzed the legal duty owed to the plaintiff. *Weiser v. Bethlehem Steel Corp.* at 16, 508 A.2d at 1245. The court noted that "at the time of the accident, Bethlehem Steel had completed its operations on the 12th floor, and Fabricated Steel's employees were the sole occupants of that floor." *Id.* at 20, 508 A.2d at 1246. Therefore, the court concluded that because Bethlehem Steel had "relinquished control" over operations on that floor, it owed no legal duty to the plaintiff. *Id.* Specifically, the court analogized Bethlehem Steel's situation to that of an owner delivering temporary possession of his land to an independent contractor, as the landowner owes no duty

to the independent contractor or its employees "with respect to an obviously dangerous condition on that portion of the land in possession of the contractor." *Id.* See also, *Hader v. Coplay Cement Manufacturing Co.*, 410 Pa. 139, 151, 189 A.2d 271, 277 (1963).

In the instant matter, defendant Crespo had no contractual duty to erect temporary railings during the construction of unit 206. None of the four purchase orders, which specified the work defendant Crespo was to perform, include the erection of temporary railings or guard rails. Additionally, Adam Coakley, the O.C. Cluss employee who oversaw work at the Fairways at Krendale project, testified that he could not recall if he at any time prior to March 29, 2006, directed Defendant Crespo to install temporary railings.

Defendant Crespo also owed no legal duty to erect temporary railings during the construction of unit 206. Similar to the defendant in *Bethlehem Steel,* defendant Crespo had relinquished possession and control of unit 206 prior to the accident giving rise to plaintiff's claim. Defendant Crespo completed its work in unit 206 by the end of January 2006, at least two months prior to the accident on March 29, 2006. Between January 2006 and March 29, 2006, a number of other subcontractors performed work on unit 206 and were in control of the premises. At the time of the accident, unit 206 was occupied by employees of L. Stewart Homes and White Heating.

As defendant Crespo had not contracted to erect temporary railings in unit 206 and had relinquished possession and control of said unit at least two months prior to the accident giving rise to this claim, it owed no contrac-

tual or legal duty to plaintiff. Therefore, no material question of fact exists as to whether defendant Crespo was negligent. On that basis, summary judgment is appropriate in this case.

This court enters the following order.

### ORDER

And now, February 9, 2009, after argument and consideration of the briefs submitted by both parties in the above-captioned case, the motion for summary judgment of the defendant, James Crespo, individually and trading and doing business as Crespo Contracting Company, is hereby granted.