J-E02004-14

2016 PA Super 213

| IHOR MALANCHUK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|

IHOR MALANCHUK

          Appellant

          v.

ILYA SIVCHUK T/A FOUR BROTHERS
CONSTRUCTION CO.,

IHOR MALANCHUK

          Appellant

          v.

ALEX TSIMURA, INDIVIDUALLY AND T/A
IMPRESSIVE WINDOWS AND ALEXIS
IMPRESSIVE WINDOWS AND TATYANA
TSIMURA, INDIVIDUALLY AND T/A
IMPRESSIVE WINDOWS AND ALEXIS
IMPRESSIVE WINDOWS AND ALEXIS
IMPRESSIVE WINDOWS, INC.,          No. 1379 EDA 2012


Appeal from the Order Entered March 26, 2012
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 3249 May Term 2009
4727 April Term, 2010


BEFORE:  FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, ALLEN,
        OTT, WECHT, STABILE AND JENKINS, JJ.

OPINION BY BOWES, J.:              **FILED SEPTEMBER 15, 2016**

      Ihor Malanchuk appeals from the March 26, 2012 order granting

summary judgment to Appellees, Alex Tsimura, both individually and trading

as Impressive Windows and Alexis Impressive Windows, and Tatyana

Tsimura, both individually and trading as Impressive Windows and Alexis

Impressive Windows, and Alexis Impressive Windows, Inc. After careful review, we reverse.

Appellant was an independent contractor who, beginning in 2007, performed carpentry work for Ilya Sivchuk's wholly-owned enterprise, Four Brothers Construction Co. ("Four Brothers"), on various construction jobs on a project-by-project basis. Also in 2007, Four Brothers hired Mr. Tsimura to act as a supervisor and field manager of its construction projects. There was no written contract between Four Brothers and Mr. Tsimura, who was treated as an independent contractor and allegedly performed his work through his wife's businesses, Impressive Windows and Alexis Impressive Windows. Four Brothers engaged in residential and commercial interior construction and employed between ten and fifteen contractors to do carpentry and trim work.

On May 2, 2008, Mr. Sivchuk had two of Four Brothers' contractors, Appellant and Mr. Tsimura, perform work at his own residence. Appellant was severely injured after he fell from scaffolding located at Mr. Sivchuk's home. On May 27, 2008, Appellant filed a claim under a workers' compensation policy that was issued by State Workers' Insurance Fund and that Appellant purchased for himself as a condition of working for Four Brothers. That insurance company joined Four Brothers as a defendant in the worker's compensation action, which was settled for $30,000 on June 2, 2010. Four Brothers contributed to the settlement, and that accord

contained a clause stating that it was agreed there was no employer-employee relationship between Appellant, on the one hand, and Four Brothers/Mr. Sivchuk, on the other hand.

On May 21, 2009, Appellant filed a personal injury action against Mr. Sivchuk and Four Brothers (collectively "Sivchuk") at docket number 3249 May Term 2009 in the Court of Common Pleas of Philadelphia County. On April 30, 2010, Appellant filed a separate action against Alex Tsimura, both individually and trading as Impressive Windows and Alexis Impressive Windows, and Tatyana Tsimura, both individually and trading as Impressive Windows and Alexis Impressive Windows, and Alexis Impressive Windows, Inc. (collectively "Tsimura") at docket number 4727 April Term 2010 in the Court of Common Pleas of Philadelphia County. In each action, Appellant raised causes of action sounding in both negligence and products liability, which were premised upon the respective defendants' action of supplying the scaffolding from which Appellant fell. Upon Sivchuk's motion filed pursuant to Pa.R.C.P. 213(a),[1] the court ordered consolidation of the two lawsuits "for

_____

[1] Pa.R.C.P. 213(a) provides:

> In actions pending in a county which involve a common question of law or fact or which arise from the same transaction or occurrence, the court on its own motion or on the motion of any party may order a joint hearing or trial of any matter in issue in the actions, may order the actions consolidated, and may make orders that avoid unnecessary cost or delay.

the purpose of discovery, arbitration and if [the arbitration is] appealed, trial" under docket number 3249 May Term 2009. Order of Court, 6/6/11, at 1.

Discovery was completed and, on May 2, 2011, Sivchuk filed a motion for summary judgment, while Tsimura followed suit on December 5, 2011. Appellant filed responses to the respective motions and submitted exhibits in support of his request that the motions be denied. Appellant withdrew his products liability claim against Tsimura.

On March 26, 2012, the court granted summary judgment in favor of Tsimura as to all counts pled in the action instituted against them, granted partial summary judgment in favor of Sivchuk as to Appellant's products liability count, and denied Sivchuk's motion for summary judgment with respect to the negligence counts presented in the action against Sivchuk. Appellant filed the present, timely appeal from the portion of the March 26, 2012 order that granted summary judgment in favor of Tsimura. The court issued a Pa.R.A.P. 1925(a) opinion in which it considered this appeal to be improperly filed from an interlocutory order, and in which it supported its decision to grant summary judgment to Tsimura.

A panel of this Court concluded that we had jurisdiction over the appeal under *Kincy v. Petro*, 2 A.3d 490 (Pa. 2010), wherein the Supreme Court analyzed the effect of a trial court order that consolidated two separate actions pursuant to Pa.R.C.P. 213(a). In *Kincy*, there were

- 4 -

different parties and different theories of liability involved in each action but both lawsuits pertained to the same traffic accident. One vehicle involved in the collision contained a driver and passenger ("vehicle number one"), and that car was struck by a vehicle ("vehicle number two") occupied solely by the driver and owned by that driver's mother. The driver of vehicle number one filed an action against the mother of the driver of vehicle number two. Vehicle number one's driver alleged therein that the mother was negligent in her operation of her car. This complaint was never amended, even after discovery clarified that the mother owned vehicle number two but was not driving it when the accident occurred. Vehicle number one's passenger and his wife then filed another lawsuit against both the daughter/driver and mother/owner of vehicle number two, and they raised averments of negligent driving and negligent entrustment, respectively, against the daughter/mother defendants.

The separately-filed actions by the passenger/wife and driver of vehicle number one were consolidated under Pa.R.A.P. 213(a) "for all purposes," including appeal. *Id*. The consolidated matter proceeded to arbitration, where the passenger in vehicle number two and his wife prevailed, and then settled their case. The driver of vehicle number one lost at arbitration and appealed to the court of common pleas. The case proceeded to trial, where nonsuit was entered in favor of the owner of vehicle number two since she was not driving her car when the collision

- 5 -

transpired and the only allegations raised in the complaint in the action involved negligent operation of vehicle number two. The Superior affirmed.

On appeal to the Supreme Court, vehicle number one's driver argued that, due to entry of the consolidation order as to all purposes, her complaint merged with that of the passenger and his wife and that their allegations of negligent driving against vehicle number two's driver should be considered as raised in the action by vehicle number one's driver. Our Supreme Court rejected that position. The **Kincy** Court concluded that a consolidation order entered under rule 213(a) "does not result in the complete consolidation of such actions, such that the pleadings are merged and/or the actions shed their separate identities." **Id**. at 491. It noted that consolidation

> is used in three different senses: First, where all except one of the several actions are stayed until one is tried, in which case the judgment in the one is conclusive as to the others; second, where several actions are combined into one and lose their separate identity and become a single action in which a single judgment is rendered; and, third, where several actions are ordered to be tried together but each retains its separate character and requires the entry of a separate judgment.

**Id**. at 494. (citation omitted).

Our Supreme Court in **Kincy** concluded that the second option, which is termed "complete consolidation," cannot occur "unless the actions involve the same parties, subject matter, issues, and defenses." **Id**. It ruled that the type of consolidation encompassed by Pa.R.C.P. 213(a) does not result

in complete consolidation. Since the two actions in question "did not involve identical parties, . . . the actions could not have been consolidated such that the actions lost their separate identities and the pleadings merged." *Id*. at 495.

The panel in the present case applied the reasoning of *Kincy*, and concluded that, despite the consolidation order, the two actions involved herein retained their separate identities because different defendants were named in each lawsuit and complete consolidation was not accomplished by the consolidation order issued in these matters. The panel reasoned that, absent a complete consolidation, the two separate lawsuits did not merge, and retained their separate identifies for purposes of appealability. Since the summary judgment order at issue in this appeal had the effect of terminating the lawsuit filed at 4727 April Term 2010 as to all defendants therein, the panel held that it was a final, appealable order as to that litigation. The panel assumed jurisdiction and reversed the grant of summary judgment to Tsimura.

The present *en banc* panel granted reargument as to the panel decision, and concluded that, since the Sivchuk and Tsimura actions were consolidated, the present appeal was interlocutory. *Malanchuk v. Sivchuk*, 106 A.3d 789 (Pa.Super. 2014) (*en banc*). The *en banc* Court distinguished *Kincy* since that matter concerned a plaintiff's effort to attain a merger of pleadings to avoid an inability to litigate a cause of action due to the

expiration of the applicable statute of limitations, and we likened this case to one where a plaintiff commences a single action arising out of the same set of factual circumstances against multiple defendants. In the prior *en banc* decision, this Court found it untenable that an "otherwise interlocutory order is final and appealable based solely on the manner in which the claims were originally presented." *Id.*

The *en banc* decision was then reversed by our Supreme Court *sub nom* in **Malanchuk v. Tsimura**, 137 A.3d 1283 (Pa. 2016). Therein, the Court rejected the notion that **Kincy** was distinguishable due to the fact that it pertained to a statute-of-limitations issue. It noted that **Kincy** was premised upon application of the following language in **Azinger v. Pennsylvania R. Co.**, 105 A. 87, 88 (Pa. 1918) (emphasis added):

> [W]here separate actions in favor of or against two or more persons have arisen out of a single transaction, and the evidence by which they are supported is largely the same, although the rights and liabilities of parties may differ, it is within the discretion of the trial judge to order all to be tried together, **though in every other respect the actions remain distinct and require separate verdicts and judgments**.

The **Malanchuk v. Tsimura** court articulated that, under this precept, "consolidation effectuating a merger or fusion of actions impressing a single identity upon them can occur only where there is a complete overlap among parties and causes of action." **Malanchuk v. Tsimura**, **supra** at 1286. Absent those requirements, consolidation can be "only for purposes of convenient pretrial and trial administration," and Rule 213(a) does not trump

*Azinger's* holding. *Id*.; *Kincy, supra* (Rule 213(a) does not envision complete consolidation between actions involving non-identical parties, theories of liability, and defenses). Hence, "separate actions lacking" an overlap of parties and causes of action "retain their separate identities and require distinct judgments," and "these principles pertain equally to appealability determinations." *Malanchuk v. Tsimura*, *supra* at 1288. Our Supreme Court concluded that "since complete consolidation did not occur," in this matter, "the common pleas court's order awarding summary judgment in favor of Appellee was a final one as to the *Tsimura* case" and thus appealable. *Id*. at 1289. The court remanded to the Superior Court for disposition of these remaining issues:[2]

> [1]. Does evidence of record that defendant Tsimura was a controlling contractor preclude summary judgment, and did the trial court err in granting summary judgment to the Tsimura defendants and failing to consider the evidence of record in a light most favorable to Plaintiff as the non-moving party, basing summary judgment on the testimony of the moving party and its witnesses, and failing to leave credibility determinations to the trier of fact?

> [2]. Does evidence of record that defendant Tsimura supplied the scaffolding within the meaning of the Restatement (Second) of Torts § 392 preclude summary judgment, and did the trial court err in granting summary judgment to the Tsimura defendants and failing to consider the evidence of record in a light most favorable to Plaintiff as the non-moving party, basing summary judgment on the testimony of the moving party and its

---

[2] We have omitted the first question presented in this appeal, as it related to our jurisdiction over the order in question.

witnesses, and failing to leave credibility determinations to the trier of fact?

[3]. Did defendant Tsimura as a co-independent contractor engaged in a common enterprise owe Plaintiff a duty of care precluding summary judgment?

Appellant's brief at 3-4.

We first discuss the applicable standard of review.

"[S]ummary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." ***Atcovitz v. Gulph Mills Tennis Club, Inc.,*** 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa.R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. ***Toy v. Metropolitan Life Ins. Co.,*** 593 Pa. 20, 928 A.2d 186, 195 (2007). In so doing, the trial court must resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment "where the right to such judgment is clear and free from all doubt." ***Id.***

***Truax v. Roulhac***, 126 A.3d 991, 996 (Pa.Super. 2015) (*en banc*) (citation omitted).

An order granting summary judgment will be reversed if the trial court committed an error of law or abused its discretion. ***Id***. The decision relating to "whether there are no genuine issues as to any material fact presents a question of law, and therefore, on that question our standard of review is *de novo.* This means we need not defer to the determinations made by the lower tribunals." ***Id***. at 997 (citation omitted). It is settled that, "If there is evidence that would allow a fact-finder to render a verdict

- 10 -

in favor of the non-moving party, then summary judgment should be denied." *Id*. (citation omitted).

Under the rule announced in ***Borough of Nanty–Glo v. American Surety Co. of New York***, 163 A. 523, 524 (Pa. 1932), which is invoked by Appellant herein, a grant of summary judgment cannot be sustained when the moving party relies solely upon oral testimony in the form of affidavits or depositions to establish the absence of a genuine issue of material fact. ***See also Bailets v. Pennsylvania Tpk. Comm'n***, 123 A.3d 300, 304 (Pa. 2015) ("oral testimony alone, of the moving party or his witnesses, *i.e.,* affidavits or depositions, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact"); ***PHH Mortgage Corp. v. Powell***, 100 A.3d 611, 620 (2014) (citation omitted) ("Testimonial affidavits of the moving party or his witnesses, not documentary, even if uncontradicted, will not afford sufficient basis for the entry of summary judgment, since the credibility of the testimony is still a matter for the jury."). The ***Nanty-Glo*** rule rests on the premise: "However clear and indisputable may be the proof when it depends on oral testimony, it is nevertheless the province of the jury to decide, under instructions from the court, as to the law applicable to the facts[.]" ***Nanty–Glo***, ***supra*** at 524.

Appellant presented the following evidence, which we must credit under the recited standard of review, to support his positions. Mr. Sivchuk's responsibilities for Four Brothers included 1) the negotiation of contracts for

the installation of interior carpentry for residences and businesses; and 2) the payment of Four Brothers' bills. Four Brothers solely utilized independent contractors to perform all services that it contracted to perform. Mr. Sivchuk maintained that he was the only employee of Four Brothers and that any other person working for Four Brothers was an independent contractor.[3]

In his deposition taken during the workers' compensation proceeding, Mr. Sivchuk reported that he did not supervise the work of his contractors. Deposition of Ilya Sivchuk, 1/26/10, at 26.[4] Mr. Sivchuk explained that Mr. Tsimura, who was also an independent contractor of Four Brothers, "owned a company, but I hired him like a supervisor." *Id*. at 27-28. Mr. Tsimura was paid biweekly by Four Brothers.

Once Mr. Sivchuk received a job on behalf of Four Brothers, he would tell Mr. Tsimura the nature and location of the work. Mr. Tsimura "handled the matter" and was in charge of assigning the business to the different carpentry independent contractors who worked for Four Brothers. *Id*. at 38. Mr. Sivchuk stated that, if there were no complications with a job, he would

---

[3] Given this testimony, we must accept Appellant's position that all the parties at issue herein were independent contractors and that Mr. Tsimura was not an employee of Sivchuk on May 2, 2008. *See* Appellant's brief at 31, n.14.

[4] This deposition is included in the certified record as Exhibit F to Appellant's response to the summary judgment motion filed by Sivchuk.

not visit the worksite and that he did so only when he received a complaint. *Id*. at 42-43. During a deposition taken in the present proceeding, Mr. Sivchuk confirmed that he told all of the carpenters performing work as independent contractors for Four Brothers that Mr. Tsimura was their supervisor and the field manager of any project. Deposition, Ilya Sivchuk, 9/9/11, at 125. Additionally, "they saw a sign on the door where it says Mr. Tsimura, the manager[.]" *Id*.

Hrihoriy Shostak, another carpentry independent contractor who worked for Four Brothers, confirmed that both Mr. Sivchuk and Mr. Tsimura told him that Mr. Tsimura was his supervisor on Four Brothers' projects. Deposition, Hrihoriy Shostak, 9/28/11, at 13. Specifically, Mr. Shostak reported that Mr. Tsimura was "a supervisor. We were supposed to listen to what he says." *Id*. Mr. Tsimura received Occupational Safety and Health Administration ("OSHA") scaffolding training every three months.

On the day of the accident, May 2, 2008, Mr. Sivchuk "called [Mr. Tsimura]" and "told him, Alex, I want to install the moldings in my ceiling." Deposition, Ilya Sivchuk, 1/26/10, at 45. The job in question involved the installation of molding on the two-story cathedral ceiling in the entrance of Mr. Sivchuk's house. Partially assembled scaffolding for that job was already located in the home. It was owned by Four Brothers and had been transported to Mr. Sivchuk's home from another Four Brothers' job.

Four Brothers' carpenters reported to work each morning at about 6:00 a.m. to a building located on Franklin Street. That location was where they received their assignments for the day from Mr. Tsimura. On May 2, 2008, Appellant reported as usual to the Franklin Street building, met Mr. Tsimura, and the two men traveled to Mr. Sivchuk's home together. When they arrived, Mr. Tsimura told Appellant that they were "going to finish the ceiling." Deposition, Ihor Malanchuk, 8/31/11, at 72. Mr. Tsimura next instructed Appellant, who had no OSHA scaffolding training and who never assembled a scaffold before that day, to erect the scaffolding. *Id*. at 75. At that time, the first tier of the scaffolding was partially built, but there was no second tier, which was needed to reach the ceiling. Mr. Tsimura then left the jobsite for about one hour.

Appellant retrieved his tools and finished assembling the scaffolding located at Mr. Sivchuk's residence. When Mr. Tsimura returned to that location, he looked at the scaffolding and saw that it was completed. Mr. Tsimura confirmed during his deposition that he visually inspected the erected scaffolding after he returned and determined, "It was fine." Deposition Alex Tsimura, 4/1/10, at 92. There were no guardrails on the scaffolding.

Mr. Tsimura then retrieved his own tools and began to cut boards on the floor while Appellant climbed onto the second tier of the scaffolding. Appellant was looking at the ceiling when one of three boards that comprised

the floor of the second tier of scaffolding turned over on one side. Appellant fell as a result of the shifting board. Appellant broke his elbow, underwent multiple surgeries, and is permanently disabled as a result of the break. It was conceded by all the parties that, under OSHA regulations, the scaffolding was required to have a guardrail. Appellant presented the report of an expert witness who opined that, at the time of the accident, the scaffolding was in violation of OSHA regulations since it lacked a guardrail and that the lack of the guardrail was the proximate cause of Appellant's fall.

Appellant first argues that he presented sufficient evidence to create a genuine issue of material fact that Tsimura breached the duty outlined in Restatement (Second) of Torts § 384, which was applied in **Leonard v. Commonwealth**, 771 A.2d 1238 (Pa. 2001).[5] The Restatement (Second) of Torts § 384 states:

> One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon and outside of the land by the dangerous character of the structure or other condition while the work is in his charge.

Comment d to that provision indicates,

---

[5] In **Duffy v. Fischbach & Moore, Inc.**, 126 A.2d 413, 416 (Pa. 1956), our Supreme Court ruled that a defendant was subject to liability under the same section of the first Restatement of Torts.

A possessor of land may put a number of persons severally in charge of the particular portions of the work of erecting a structure or creating any other condition upon the land. Again, a general contractor employed to do the whole of the work may, by the authority of his employer, sublet particular parts of the work to subcontractors. In such a case, the rule stated in this Section applies to subject the particular contractor or subcontractor to liability for only such harm as is done by the particular work entrusted to him.

Additionally, comment a to this provision outlines that § 384 "applies to a person who on behalf of the possessor of land erects thereon a structure or creates any other artificial condition, whether in so doing he is acting as the possessor's servant or as an independent contractor, and whether he does the work for reward or gratuitously." Under the evidence presented by Appellant, Tsimura is subject to liability pursuant to § 384 since Mr. Tsimura was the contractor placed in charge of overseeing the construction of the scaffolding by the landowner and the scaffolding was a structure with a dangerous character, which caused Appellant's harm.

Herein, the trial court concluded that there was no evidence that Mr. Tsimura was in charge of the job at Mr. Sivchuk's residence. We disagree. Mr. Sivchuk, in his deposition, repeatedly stated that Mr. Tsimura was the sole field manager and supervisor over all jobs assigned to Four Brothers' carpentry contractors. Mr. Sivchuk reported that he did not visit worksites absent customer complaints. Mr. Shostak confirmed that all the carpentry contractors were told by both Mr. Sivchuk and Mr. Tsimura that

Mr. Tsimura was the supervisor of the jobs that they were assigned through Four Brothers.

Appellant also presented evidence that the job in question, even though it was at Mr. Sivchuk's residence, was assigned to him through Four Brothers and that Mr. Tsimura was in control of the job as a supervisor. Appellant was not contacted by Mr. Sivchuk. Rather, he went to the building that he reported to each morning for his work assignments from Four Brothers, and he received his work order from Mr. Tsimura, who traveled with him to the residence and directed Appellant to assemble the scaffolding and inspected it afterwards. Mr. Tsimura had OSHA scaffolding training while Appellant did not. Hence, Appellant presented sufficient evidence that there was a genuine issue of material fact as to whether Mr. Tsimura was in control of the installation of molding on the ceiling and the construction of the scaffolding so as to subject Tsimura to liability under Restatement § 384.

Appellant also contends that Tsimura had a duty to him under *Farabaugh v. Pennsylvania Turnpike Com'n*, 911 A.2d 1264 (Pa. 2006), wherein our Supreme Court applied Restatement (Second) of Torts § 324A, liability to third person for negligent performance of undertaking. In *Farabaugh*, the plaintiff's decedent was killed during the course of his work for the general contractor of a worksite while he was driving his truck across a road used to haul materials. The plaintiff instituted an action against the construction manager of the construction site and claimed that the road had

not been properly maintained and that the safety violations were the proximate cause of the incident that killed the decedent.

Our Supreme Court reversed the grant of summary judgment in favor of the construction manager since the construction manager had assumed a contractual obligation to inspect and otherwise monitor the jobsite. It concluded that the construction manager owed the plaintiff's decedent a duty pursuant to § 324A. That portion of the Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts, § 324A. The **Farabaugh** Court stated that,

> Generally, a party to a contract does not become liable for a breach thereof to one who is not a party thereto. However, a party to a contract by the very nature of his contractual undertaking may place himself in such a position that the law will impose upon him a duty to perform his contractual undertaking in such manner that third persons—strangers to the contract—will not be injured thereby. It is not the contract *per se* which creates the duty; it is the law which imposes the duty because of the nature of the undertaking in the contract.

*Id*. at 1283; *see also Casselbury v. American Food Service*, 30 A.3d 510, 511 (Pa.Super. 2011) (where defendant agreed to provide food services for owner of a business, defendant had contractual obligation to perform that undertaking in safe manner and was subject to liability to person who was purportedly injured due to negligent performance of that responsibility); *cf. Moranko v. Downs Racing LP*, 118 A.3d 1111 (Pa.Super. 2015) (*en banc*) (§ 324A was inapplicable when defendant contracted directly with the plaintiff's decedent to perform the services that purportedly subjected defendant to liability and thus decedent was not a third party in the scenario at issue).  Notably, this duty can be imposed only when the defendant has specifically undertaken a contractual responsibility for the safety of the subject of the contract.  *Reeser v. NGK North American, Inc.,* 14 A.3d 896 (Pa.Super. 2011) (where engineering firm's only contractual undertaking was to report to plant owner the levels of a particulate emanating from plant, as opposed to engaging in actions involving plant safety, a member of the public allegedly injured by high levels of that particulate could not recover against engineering firm).

We concur with Appellant that he presented sufficient evidence to create a genuine issue of material fact as to whether Mr. Tsimura had a duty under § 324A, as follows.  Mr. Tsimura was under a verbal contract with Sivchuk to supervise the worksites on Four Brothers' projects and was the sole manager of the construction site on the day of the accident.  He was

paid to perform his managerial services by Four Brothers and received OSHA scaffolding training every three months. Thus, Mr. Tsimura undertook, for consideration, to render services for Sivchuk and should have recognized that, as the job-site supervisor, he needed to protect Appellant, a third-party stranger to the contract between Sivchuk and Mr. Tsimura who was working under Mr. Tsimura's direction. Appellant's proof also was sufficient to create a genuine issue of material issue of fact that Mr. Tsimura failed to exercise reasonable care and created a risk of harm to Appellant during his undertaking when Mr. Tsimura failed to ensure that the two-story scaffolding had a guardrail to prevent Appellant from falling as he was working on the two-story cathedral ceiling. Indeed, this case bears remarkable resemblance to the facts examined in *Farabaugh*.

On appeal, Tsimura relies upon testimonial statements that Mr. Sivchuk and Mr. Shostak made during their depositions that Mr. Sivchuk was in control of the job at his home. However, Appellant presented countervailing evidence. First, he established that this job was treated the same as other undertakings assigned to him by Four Brothers, and Mr. Tsimura, not Mr. Sivchuk, assigned him the task and was present at the job site when the accident occurred. When we credit Appellant's evidence, as we must in this context, it refutes that Mr. Sivchuk was in control of this particular job. Furthermore, it is established that under the *Nanty-Glo* rule, summary judgment may not be granted based upon testimonial evidence

presented by the moving party. A jury may choose not to credit the testimony of any witness presented by Tsimura.

Appellant additionally premises liability against Tsimura upon Restatement (Second) of Torts § 392, chattel dangerous for intended use. Initially, we observe that, "This Court has relied upon Section 392 as setting forth Pennsylvania law regarding negligent supply of a chattel." *Drum v. Shaull Equipment and Supply Co.*, 787 A.2d 1050, 1063 (Pa.Super. 2001) (citing *Fullard v. Urban Redevelopment Authority of Pittsburgh*, 293 A.2d 118 (Pa.Super. 1972)); *see also Lambert v. Pittsburgh Bridge and Iron Works*, 344 A.2d 810 (Pa. 1975) (citing § 392 with approval).

That section provides:

One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by person for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied, or

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

Restatement (Second) of Torts § 392.

Appellant avers that Tsimura supplied the scaffolding in question for purposes of its business and failed to exercise reasonable care to make the

chattel safe for the use for which it was supplied. He notes that Mr. Tsimura took possession of the scaffolding by directing Appellant to construct it, inspect it, and telling Appellant to use it. Appellant also notes that Mr. Tsimura undertook this task while he was performing his business as supervisor for Four Brothers' projects.

Tsimura counters that it did not supply the scaffolding because it did not own it. However, under § 392, a supplier of a chattel does not have to be its owner. Comment c, entitled ownership of chattel immaterial, states, "In order that the rule stated in this Section shall apply, it is not necessary that the chattel be owned by the one who supplies it. It may be leased to him or borrowed by him." An actor is a supplier if he had either "possession or control of it for the purpose of using it in connection with his business, and that he has supplied it for such purpose." Restatement (Second) of Torts § 392, comment c.

It must be recalled that the relationship among the parties was that of independent contractors. Tsimura's business was to supervise worksite operations for Four Brothers and the work of Four Brothers' other independent contractors, including Appellant. Appellant did not bring the scaffolding to the job. Rather, Mr. Tsimura, as agent for his business, exercised control over the scaffolding when instructing Appellant to build and use it so that Appellant could perform his job. This direction of the use of the chattel constituted borrowing of the item for Tsimura's business

purposes of supervising and ensuring completion of the job. Thus, there was sufficient evidence to create a genuine issue of material fact as to whether Tsimura took possession and control of that item in furtherance of Tsimura's business as supervisor of the job in question. The trial court therefore improperly granted summary judgment as to Appellant's c Restatement § 392 claim.

Finally, Appellant maintains that Tsimura is subject to liability under the common law negligence principle, as outlined in **Duffy v. Peterson**, 126 A.2d 413, 416 (Pa. 1956), that "[a]ll individual sub-contractors engaged in a common enterprise owe to each other the duty of care required to business visitors." Our Supreme Court analyzed this duty in **McKenzie v. Cost Brothers, Inc.**, 409 A.2d 362 (Pa. 1979). Therein, an employee of one subcontractor at a construction site was injured by a dangerous condition created by another subcontractor's employee, and no warning about the danger was placed at the jobsite. A nonsuit was granted to the subcontractor who employed the worker who created the hazard, and our Supreme Court reversed. It reiterated that "a subcontractor on a construction job owes to employees of other subcontractors, on the same site, the care due a business visitor from a possessor of land." **Id**. at 364. **See also Staub v. Toy Factory, Inc.**, 749 A.2d 522 (Pa.Super. 2000) (applying **McKenzie**). Under Restatement § 343,

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

Appellant, a contractor of Four Brothers, presented sufficient evidence to create a material fact that Tsimura, as another contractor on the same job, created a dangerous condition on Mr. Sivchuk's land that was the proximate cause of Appellant's injuries. Mr. Tsimura was in control of the jobsite when the accident occurred. He directed Appellant to erect the scaffolding, inspected it after that task was performed, and told Appellant to use it. Due to his OSHA scaffolding training, Mr. Tsimura knew or should have known that OSHA required the scaffolding to include a guardrail and that the absence of that guardrail created the risk of a fall, which was suffered by Appellant. Appellant did not have training and Mr. Tsimura should have expected that appellant would not realize the danger he faced.

In light of the foregoing, we conclude that Appellant adduced sufficient evidence to subject Tsimura to liability and that summary judgment was improperly granted in Tsimura's favor.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judge Allen did not participate in the consideration or decision of this case.

Former Judge, now Justice Wecht, did not participate in the consideration or decision of this case

Judge Jenkins did not participate in the consideration or decision of this case.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>9/15/2016</u>