J-A24027-23

| | | |
|---|---|---|
| JOHN FOX, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DIANE FOX, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : | No. 3066 EDA 2022 |
| MATTHEW J. DOWNEY, M.D., NORTHEASTERN GASTROENTEROLOGY ASSOCIATES, P.C. WAYNE MEMORIAL HOSPITAL AND WAYNE MEMORIAL HEALTH SYSTEM, INC. | : : : : : : : | |

Appeal from the Order Entered November 4, 2022
In the Court of Common Pleas of Wayne County Civil Division at No(s):
2017-00493

BEFORE:  STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY DUBOW, J.:                    **FILED FEBRUARY 01, 2024**

Appellant, John Fox, Individually and as Administrator of the Estate of Diane Fox, Deceased, appeals from the November 4, 2022 Order, entered in the Wayne County Court of Common Pleas, granting the Motion for Summary Judgment filed by Appellees, Matthew J. Downey, M.D., Northeastern Gastroenterology Associates, P.C., Wayne Memorial Hospital, and Wayne Memorial Health System Inc., and dismissing Appellant's complaint with prejudice in this medical and corporate negligence action.  After careful review, we affirm.

The relevant facts and procedural history are as follows. On May 9, 2018, Appellant filed a ten-count Amended Complaint against Appellees asserting medical negligence and related claims arising from Dr. Downey's alleged negligence in performing an endoscopy on Appellant's wife.[1, 2]

Pursuant to a case management order, the court initially scheduled trial in this matter for November 2019, and ordered that Appellant produce his expert reports by July 1, 2019. However, the court subsequently continued the trial date five times—primarily, but not exclusively—at Appellant's request, before finally scheduling trial for November 14, 2022.[3] During this period, the trial court also issued numerous case management orders, the last of which, entered on October 28, 2021, set November 15, 2021, as the deadline for Appellant to file expert reports.

---

[1] Specifically, Appellant raised one claim of negligence against Dr. Downey, claims of negligence, vicarious liability, and ostensible agency against Northeastern Gastroenterology Associates, P.C., Wayne Memorial Hospital, and Wayne Memorial Health System, Inc., one claim of corporate negligence against Wayne Memorial Hospital, and wrongful death and survival claims against all defendants. On November 1, 2022, the trial court approved a stipulation of the parties dismissing Wayne Memorial Hospital and Wayne Memorial Health System, Inc., as defendants.

[2] Appellant claimed that Dr. Downey, who treated Appellant's wife from October 22, 2015, to October 25, 2015, performed the endoscopy procedure incorrectly, which led to various complications, including infection, sepsis, and ultimately Appellant's wife's death on September 5, 2016.

[3] Appellant requested and received three continuances, the parties jointly requested one continuance, and the court once rescheduled trial once due to the COVID-19 pandemic.

On October 14, 2022, Appellees filed a motion for summary judgment in which they asserted that, to date, Appellant had "not produced any expert reports to support any claims on any theories of liability against any [Appellees]." Motion, 10/14/22, at ¶ 9. Appellees argued that, because Pennsylvania law requires a medical malpractice plaintiff seeking to establish negligence to present expert medical testimony to demonstrate that a defendant departed from the generally accepted standards of medical practice and that this departure caused the plaintiff's injury, Appellant's failure to produce any expert reports entitles Appellees to judgment as a matter of law. Appellees also argued that, given the proximity to trial, they would "sustain severe prejudice by late expert submissions" because "the late hour of the potential reports do not allow [them] sufficient notice or time for trial preparation." *Id.* at ¶¶ 15-16. Moreover, they asserted that any effort by Appellant to produce an expert report at this late date would violate the Pennsylvania Rules of Civil Procedure and the trial court's October 28, 2021 scheduling order.[4]

On October 17, 2022, eleven months after his expert report was due, Appellant identified his expert, Dr. John Y. Nasr, for the first time and produced an expert report authored by him.

---

[4] Appellee acknowledged that, once the court had continued the trial date to November 14, 2022, the parties informally agreed to extend the deadline for Appellant to produce expert reports. The record does not reflect that this "informal agreement" resulted in an order of court extending the deadline.

The following day, Appellant filed a motion to continue the November 14, 2022 trial date due to the "unforeseen and unanticipated inability to obtain a timely expert medical report . . . despite good faith efforts to do so." Motion, 11/14/22, at ¶ 4. In particular, Appellant's "gastrointestinal surgeon[, Dr. Nasr,] has not been able to timely respond to telephonic and email requests for follow up communication and timely produce an expert liability report." *Id.* The trial court denied the motion to continue.

On October 31, 2022, Appellant filed an answer to Appellees' motion for summary judgment. Appellant denied that the trial court's October 28, 2021 scheduling order required him to produce expert reports by November 15, 2021, because the parties had informally agreed to extend the deadline, albeit to an unspecified date in the future. Appellant, nevertheless, admitted that he did not produce an expert report until October 17, 2022, just under one month before the commencement of trial, due to "unforeseen and unpredictable reasons set forth in [Appellant's] Motion for Continuance." Answer, 10/31/22, at ¶ 7. In addition, Appellant acknowledged that he would be seeking to replace Dr. Nasr as his expert prior to trial and, therefore, would "benefit from a continuance of the trial to replace the expert." *Id.* at ¶ 10. Appellant argued that, because he produced Dr. Nasr's expert report providing expert medical testimony regarding the standard of care and causation, he had presented a *prima facie* case of medical malpractice. *Id.* at ¶¶ 13-14.

Following a hearing, on November 4, 2022, the trial court granted Appellees' motion for summary judgment and dismissed the case with

prejudice pursuant to Pa.R.Civ.P. 1035.2(2).[5] Relying on Pa.R.Civ.P. 4003.5(b)[6] and **Kurian ex rel. Kurian v. Anisman**, 851 A.2d 152 (Pa. Super. 2004), the trial court determined that, although Appellant had not acted in bad faith, allowing Appellant's expert report at such a late stage would prejudice Appellees. The court observed that, as in **Kurian**, Appellant had only identified Dr. Nasr as his expert in response to Appellees' motion for summary judgment, and, even after doing so, stated at the hearing on the motion that he intended to use an expert other than Dr. Nasr to testify at trial. The court further observed that Appellant produced Dr. Nasr's report approximately 11 months late and less than one month before trial. The court also found that any additional delay would disrupt the efficient and just administration of justice. The court, therefore, exercised its discretion to exclude Appellant's expert report and concluded that, without it, Appellant had failed to establish a *prima facie* case against Appellees.

This timely appeal followed. Appellant complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. In lieu of filing a Rule 1925(a)

---

[5] Rule 1035.2(2) permits a party to seek judgment as a matter of law where an adverse party "has failed to produce evidence of facts essential to the cause of action . . . which[,] in a jury trial would require the issues to be submitted to a jury." Pa.R.Civ.P. 1035.2(2).

[6] Rule 4003.5(b) provides that, "[an] expert whose identity is not disclosed [through interrogatories] shall not be permitted to testify on behalf of the defaulting party at the trial of the action. However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief." Pa.R.Civ.P. 4003.5(b).

opinion, the trial court directed this Court to its November 4, 2022 Memorandum and Opinion for an explanation of the reasons underlying its decision.

Appellant raises the following four questions for our review:

1. Should this [C]ourt overrule **Kurian ex rel. Kurian v. Anisman**, 851 A.2d 152, 159 (Pa. Super. 2004), the case relied upon by the trial court to *sua sponte* exclude Appellant's expert report pursuant to Pa.R.Civ.P. 4003.5(b)?

2. Did the trial court err when it applied **Kurian ex rel. Kurian v. Anisman**, 851 A.2d 152, 159 (Pa. Super. 2004)[,] here, where this case is distinguishable from **Kurian** because there is no prejudice readily identifiable on the record?

3. Did the trial court commit legal error when it applied Pa.R.Civ.P. 4003.5(b) here without conducting an evidentiary hearing to gather facts necessary to assess the prejudice to each party, as required under Rule 4003.5(b)?

4. Did the trial court abuse its discretion when it did not grant a continuance, as contemplated by Pa.R.Civ.P. 4003.5(b), given the exceptional circumstances present here and where such relief would have avoided prejudice to all parties?

Appellant's Brief at 8-9.

**A.**

An order granting summary judgment will be reversed if the trial court committed an error of law or clearly abused its discretion. **Malanchuk v. Sivchuk**, 148 A.3d 860, 865 (Pa. Super. 2016). Where, as here, the trial court's decision regarding a motion for summary judgment involves a finding based upon its procedural history, we evaluate that order under an abuse of discretion standard. **Cooper v. Schoffstall**, 905 A.2d 482, 488 (Pa. 2006).

**B.**

In his first issue, Appellant urges this Court to overrule **Kurian**, alleging that **Kurian** improperly interpreted the Pennsylvania Supreme Court's decision in **Gerrow v. John Royle & Sons**, 813 A.2d 778 (Pa. 2002) (OAJC) and conflicts with Rule 1035.3(b).[7]  Appellant's Brief at 25-39.  Appellant argues that the Court in **Kurian**, "misunderst[ood ] the interplay between the relevant [R]ules" of Civil Procedure and its holding is "fundamentally flawed because . . . a sanction pursuant to Rule 4003.5(b) requires an assessment of prejudice, which cannot be accomplished when a trial court raises the issue *sua sponte* in a motion for summary judgment."  **Id.** at 33-34.  Appellant characterizes **Kurian**'s reasoning as "weak" and its holding "inconsistent with our Rules of Civil Procedure because a court, at the summary judgment stage, is not in a position to make the necessary findings of fact required to impose a Rule 4003.5(b) sanction."  **Id.** at 38.

It is well-settled that "except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court," **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006), a three-judge "panel [of the Superior Court] is bound by existing precedent and, therefore, lacks the authority to overturn another panel decision." **Commonwealth v. May**, 271 A.3d 475, 482 (Pa. Super. 2022), *appeal*

---

[7] Rule 1035.3(b) permits an adverse party to "supplement the record or set forth reasons why the party cannot present evidence essential to justify opposition to [a] motion [for summary judgment." Pa.R.Civ.P. 1035.3(b).

*denied*, 286 A.3d 214 (Pa. 2022); *see also **Commonwealth v. Beck***, 78 A.3d 656, 659 (Pa. Super. 2013) (holding that a three-judge panel of this Court "is not empowered to overrule another panel of the Superior Court"). *Cf. **Commonwealth v. Rosario***, 294 A.3d 338, 354 (Pa. 2023) ("An *en banc* panel of an intermediate court is authorized to overrule a three-judge panel decision of the same court.") (citation omitted).

Because our Supreme Court has not issued any decisions calling into question this Court's holding in ***Kurian***, we are bound by ***Kurian*** and decline Appellant's invitation to overturn it.[8]

**C.**

In his second and third issues, Appellant avers that the court erred in applying the holding in ***Kurian*** without holding an evidentiary hearing to determine whether Appellant's late-produced expert report prejudiced any party. Appellant's Brief at 39-45. Appellant attempts to distinguish this case from ***Kurian*** by emphasizing that the plaintiff there "brazenly violated multiple orders and [] the informal extension of the expert deadline." ***Id.*** at 40. Appellant argues that because the plaintiff in ***Kurian*** produced the expert witness report on the day the parties were supposed to go to trial, the court could readily discern on the face of the record the prejudice caused. ***Id.*** Appellant, therefore, concludes that "***Kurian***'s holding that a trial court can

---

[8] Moreover, as discussed *infra*, in ***Monroe v. CBH20, LP***, 286 A.3d 785, 804-860 (Pa. Super. 2022) (*en banc*), an *en banc* panel of this Court recently considered issues similar to those presented in ***Kurian*** and approved that panel's analysis and reasoning.

*sua sponte* raise Rule 4003.5(b) as a sanction to preclude an otherwise Rule 1035.3-compliant expert report is limited to cases where prejudice is apparent on the face of the record." ***Id.*** We disagree.

This Court has held that, "when a party makes a timely response to a summary judgment motion and attempts to supplement the record with otherwise untimely expert reports, the court may, on its own motion, determine whether this is allowed under Rule 4003.5(b)." ***Kurian***, 851 A.2d at 159. In other words, when considering a motion for summary judgment, the court must determine whether the movant would be prejudiced by the inclusion of the supplemental expert report. ***Id.*** at 159, 162.

In ***Kurian***, this Court found that the appellees would be prejudiced by the late inclusion of the expert report since the appellants had violated numerous court-ordered deadlines and offered the report on the day of trial. ***Id.*** at 162. We reasoned that allowing the report at such a late stage caused "unfair surprise and prejudice," since appellees would be left with no time to evaluate and respond to the expert testimony. ***Id.*** We observed that such prejudice could be neutralized if the court delayed trial; however, we concluded that further delaying trial would "disrupt the efficient and just administration of justice and would send a blatant message that case management deadlines are meaningless." ***Id.*** Hence, the Court determined that the trial court did not err in precluding the expert reports and granting summary judgment.

Recently, in **Monroe v. CBH20, LP**, 286 A.3d 785, 804-860 (Pa. Super. 2022) (*en banc*), this Court considered **Kurian** and its discussion of the interplay between Rules 4003.5(b) and 1035.5(b). **Id.** at 803-806. Notably, this Court emphasized that, pursuant to **Kurian**, the trial court may preclude an otherwise untimely expert report produced as part of a timely response to a motion for summary judgment where the "complaining party shows that he has been prejudiced from properly preparing his case for trial as a result of the dilatory disclosure." **Id.** at 805 (citing **Kurian**, 851 A.2d at 162).

Here, Appellant denies that he "continually" violated court orders and asserts that there is no evidence on the record that his conduct prejudiced Appellees. Appellant's Brief at 40. He contends that the trial court erred in "apparently conclud[ing] that prejudice existed simply because of the time that elapsed from the court's-imposed deadline and the trial date." **Id.** at 41. Appellant further summarily posits that because Appellees had agreed to an informal extension of the deadline for producing the expert report, they could not be prejudiced by that elapsed time. **Id.** at 42. He also baldly asserts that the trial court inappropriately considered his acknowledgement that he intends to replace Dr. Nasr with a new expert when determining that his conduct had prejudiced Appellees, arguing that "[w]hat trial counsel intends to do in the future—and whether this court allows him to do so—is a determination for another day." **Id.**

Appellant's arguments and our review of the record fail to convince us that the trial court abused its discretion by excluding his expert report without

holding an evidentiary hearing. The record clearly indicates that Appellant violated the trial court's scheduling order when he did not produce any expert reports by the deadline for doing so, and, instead, waited an additional 11 months before providing Appellees with Dr. Nasr's report. In addition, the purported agreement between the parties to extend the deadline for producing the expert report is of no moment as the parties did not reduce it to writing as required by Pa.R.Civ.P. 201. **See** Pa.R.Civ.P. 201 ("Agreements of attorneys relating to the business of the court shall be in writing, except such agreements [made at the bar of the court] as are noted by the prothonotary upon the minutes or by the stenographer on the stenographer's notes.").

Moreover, given that Appellant's counsel indicated less than one month before trial was scheduled to commence that he intended to replace Dr. Nasr with a new, unidentified expert, who would presumably author a new expert report, Dr. Nasr's report was of no value to Appellees in their preparation of a defense against Appellant's medical malpractice claims. **See Miller v. Brass Rail Tavern, Inc.**, 664 A.2d 525, 530 n.3 (Pa. 1995) ([T]he purpose of Pa.R.C[iv].P. 4003.5 is to prevent surprise."). Therefore, it is evident from the record that Appellant's conduct prevented Appellees from preparing for trial to their detriment.[9]

_____

[9] We observe that Appellant has not cited to any case law in support of his assertion that Appellees could not be prejudiced by Appellant's 11-month delay in providing them with an expert report simply because they informally agreed to an extension of the deadline for Appellant to provide the report. *(Footnote Continued Next Page)*

Appellant also complains that the trial court erred by not holding a hearing to develop the factual record so that it could properly consider the factors set forth in ***Feingold v. Southeastern Pa. Transp. Auth.***, 517 A.2d 1270 (Pa. 1986), before imposing a Rule 4003.5(b) sanction.[10]  Appellant's Brief at 44.  He essentially argues that the trial court failed to consider the prejudice to **him** before excluding Dr. Nasr's report.

We first observe that ***Feingold*** did not impose on the trial court a requirement to hold an evidentiary hearing prior to determining whether to exclude a late-filed expert report as Appellant implies.  Instead as the ***Feingold*** Court noted, Rule 4003.5(b) merely requires that the court "balance the facts and circumstances of each case to determine the prejudice to each party."  ***Feingold***, 517 A.2d at 1273.  Moreover, Rule 4003.5(b) "give[s] the trial court discretion to preclude expert trial testimony at any pretrial date[.]" ***Kurian***, 851 A.2d at 161 (emphasis omitted).

---

Further, we reject the premise of his argument.  As noted above, prejudice arises not because of the delay *per se* but because of the consequence of the delay, *i.e.*, the lack of time to review the report and prepare an appropriate defense in response to it.

[10] The ***Feingold*** factors are:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith [or] willfulness in failing to comply with the court's order.

***Feingold***, 517 A.2d at 1272-73 (citation omitted).

As noted above, Appellant produced an expert report 11 months after the deadline to do so and more than three years after he filed the complaint initiating this matter. Critically, however, Appellant subsequently conceded at the November 2, 2022 hearing on Appellees' motion for summary judgment that he would not be using Dr. Nasr as an expert witness at trial. Thus, less than two weeks before trial, Appellant still had not identified his expert witness and had not produced an expert report upon which he intended to rely in support of his medical malpractice claims. In light of these facts, as well as the court's acknowledgement that it had already continued this matter five times, its concern that "any additional delay in trial would disrupt the efficient and just administration of justice[,]" Trial Ct. Op., at 4, and its prerogative to enforce its own case management orders, we conclude that the trial court properly exercised its discretion as provided in Rule 4003.5(b). Appellant is, thus, not entitled to relief on this claim.

**D.**

In his final issue, Appellant asserts that the trial court abused its discretion in not continuing this matter as permitted by Rule 4003.5(b). Appellant's Brief at 45-48. Appellant contends that his difficulty in obtaining Dr. Nasr's report "fits comfortably within Rule 4003.5(b)'s exception for extenuating circumstances," especially because, Appellant's conduct was not willful or in bad faith. *Id.* at 45-46. Appellant argues that any prejudice Appellees suffered as a result of his conduct was not significant enough to outweigh the prejudice he suffered as a result of the dismissal of his case. *Id.*

at 46. He claims the following facts support this argument: (1) Appellees agreed informally to extend the expert deadline; (2) Appellees knew Appellant had obtained an expert and were just waiting for him to write the expert report; (3) Appellees should not have been surprised by the contents of the expert report because it "hues closely to the Complaint"; and (4) Appellees never sought any discovery sanctions to preclude Appellant's expert from testifying. *Id.* at 47-48.

We reiterate that, pursuant to Rule 4003.5(b), if a party does not disclose the identity of an expert witness as required through interrogatories, and the failure to do so "is the result of extenuating circumstances beyond the control of the defaulting party, the court **may** grant a continuance or other appropriate relief." Pa.R.Civ.P. 4003.5(b) (emphasis added). When considering whether to exclude a plaintiff's expert's testimony, "[i]n the absence of bad faith or willful disobedience of the rules, the most significant considerations are the importance of the witness' testimony and the prejudice, if any, to the party against whom the witness will testify." *Linker v. Churnetski Transp., Inc.*, 520 A.2d 502, 504 (Pa. Super. 1987).

Here, the trial court found "no bad faith or misrepresentation" on Appellant's part. Nevertheless, it declined to continue the case owing to the disruption to the "efficient and just administration of justice" that a sixth continuance would cause. Trial Ct. Op. at 3-4. Further, based on the prejudice caused by Appellant's failure to timely identify and produce Dr. Nasr's expert report, followed by Appellant's admission that he intended to replace Dr. Nasr

- 14 -

mere weeks prior to trial, the trial court properly exercised its discretion provided by Rule 4003.5(b) in declining to continue this matter rather than exclude Dr. Nasr's expert report and testimony.  This claim, thus, fails.

**E.**

In sum, none of Appellant's issues merit relief.  Accordingly, we affirm the trial court's order granting summary judgment in favor of Appellees and dismissing Appellant's claims with prejudice.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/1/2024